**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK                                           TELEPHONE (334) 954-3600

```
July 10, 2007
```

# NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style:    Boswell v. Gumbaytay**

**Case Number:    2:07-cv-00135-WKW**

**This Notice of Correction was filed in the referenced case this date to correct the main PDF document previously attached by E-Filer to include the certificate of service.**

**The correct PDF document is attached to this notice for your review.   Reference is made to document # 24  filed on   July 9, 2007.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| YOLANDA M. BOSWELL,<br><br>  Plaintiff,<br><br>v.<br><br>JAMARLO K. GUMBAYTAY,<br>D/B/A THE ELITE REAL ESTATE<br>CONSULTING GROUP,<br><br>AND<br><br>MATTHEW W. BAHR<br><br><br>  Defendants. | Civil Case No. 2:07-cv-135-WKW<br><br><br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF ENTRY OF DEFAULT<br>JUDGMENT AND DAMAGES** |

**PROCEDURAL HISTORY AND SUMMARY OF ARGUMENT**

The Plaintiff, Yolanda Boswell, filed her Fair Housing Act (hereinafter "FHA") complaint in this matter on February 14, 2007, and served it on Defendants Jamarlo K. GumBayTay and Matthew Bahr by U.S. Mail. They did not appear or respond. The Plaintiff filed and served her amended complaint on May 4, 2007. Defendants subsequently contacted Plaintiff's counsel, making it clear that they received service and actual notice of this action, but nonetheless, Defendants again did not appear, respond, or seek an extension of time within the 20-day period required under Rule 12(a), Fed. R. Civ. P.

To date, Defendant Bahr has still not appeared or answered. Defendant GumBayTay filed an untimely Answer on June 27, 2007, 54 days after the Plaintiff's amended complaint was served and filed. However, his Answer does not seek leave to file an untimely Answer, or set out any cause for his failure to appear or answer within the time limits required by the Federal

Rules of Civil Procedure. Moreover, his "Answer" is almost entirely unresponsive to the allegations contained within the Plaintiff's complaint, and instead seeks to involve the Court in a separate breach-of-contract claim. For these reasons, the Plaintiff seeks to strike Defendant GumBayTay's Answer as untimely and unresponsive and seeks entry of default judgment against both Defendant Bahr and Defendant GumBayTay.

The Plaintiff submits this memorandum of law in support of damages for such default judgment. The Plaintiff seeks compensatory damages, punitive damages, attorneys' fees and costs, and equitable relief for violation of federal anti-discrimination law. Due to the egregiousness of the harassment and retaliation suffered by the Plaintiff at the hands of Defendants, she seeks a compensatory and punitive damage award of $125,000. As outlined below, such an award would be supported by the outrageousness of the Defendants' conduct and by past jury awards in FHA discrimination and retaliation cases. In addition, counsel for the Plaintiff submit a request for attorneys' fees and costs in the amount of $10,801.50.

## ARGUMENT

### I. The Plaintiff Is Entitled to Compensatory and Punitive Damages.

The Plaintiff seeks both compensatory and punitive damages for her claims of discrimination and retaliation under the FHA. The FHA is clear that victims of housing discrimination are entitled to actual/compensatory damages. 42 U.S.C. § 3613(c)(1). "[A]nger, embarrassment, and emotional distress are clearly compensable injuries under this standard." *Banai v. Secretary, U.S. Dep't of Housing & Urban Dev.*, 102 F.3d 1203, 1207 (11th Cir. 1997). That such damages cannot be measured exactly does not bar recovery, as "[t]he plaintiff need not prove a specific loss to recover general, compensatory damages …" *Marable v. Walker*, 704 F.2d

1219, 1220-21 (11th Cir. 1983). The plaintiff's own testimony suffices as evidence to support an award of pain and suffering damages in FHA cases. *E.g.*, *id.*

In addition, punitive damages are available under 42 U.S.C. § 3613(c)(1) of the FHA when a defendant's conduct is "motivated by evil motive or intent" or shows a "reckless or callous disregard of or indifference" to the plaintiff's rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983) (setting out standard in § 1983 case); *see also, e.g.*, *Badami v. Flood*, 214 F.3d 994, 997 (8th Cir. 2000) (applying *Smith* standard in FHA case); *Alexander v. Riga*, 208 F.3d 419, 430-32 (3d Cir. 2000) (same); *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1239 (D.C. Cir. 1997) (same). The purpose of such an award is "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Smith*, 461 U.S. at 37.

In analyzing the permissible ratio between the amounts awarded for punitive and compensatory damages, the Eleventh Circuit has recently upheld a punitive damages verdict with a 9-to-1 ratio to compensatory damages not including attorney fees and a 5-to-1 ratio including such fees. *Action Marine, Inc. v. Continental Carbon Inc.*, 481 F.3d 1302, 1321-22 (11th Cir. 2007); *see also Bogle v. McClure*, 332 F.3d 1347, 1361-62 (11th Cir. 2003) (upholding punitive damages award with an approximately 4-to-1 ratio to compensatory damages). Plaintiffs in the present case seek only a 1.5-to-1 punitive to compensatory damages ratio not taking into account attorney fees, or a 1.25-to-1 ratio when attorney fees are taken into account.

As demonstrated below and in the affidavit of the Plaintiff attached as Exhibit 1, the Defendants — specifically, Defendant GumBayTay acting as the agent of Defendant Bahr — engaged in egregious sexual harassment of and retaliation against the Plaintiff that caused her

3

great emotional distress. She is therefore entitled to an award of compensatory and punitive damages as a result.

**II. Defendants GumBayTay and Bahr Are Both Liable for the Egregious Actions of Defendant GumBayTay.**

The Plaintiff seeks to recover against Defendant GumBayTay, the property manager who directly engaged in the unlawful sexual harassment, and Defendant Bahr, the owner of the property who hired Defendant GumBayTay to be his management agent. The FHA provides for vicarious liability, which "make[s] principals … vicariously liable for the acts of their agents in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (generally addressing vicarious liability for damages in FHA context); *cf. Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 765 (1998) (finding employers vicariously liable for the actions of those supervisory employees creating a hostile, sexually harassing environment under Title VII); *Faragher v. City of Boca Raton*, 524 U.S. 775, 808-10 (1998) (same). Such liability is not dependent on the principal explicitly authorizing or ratifying the discrimination engaged in by his agent. *Meyer*, 537 U.S. at 285-86 (approvingly citing *New Orleans, M & C R Co. v. Hanning*, 15 Wall 647, 649 (1873), for this principle). When an agent is employed in a managerial capacity, as is the case here, the principal's vicarious liability extends to punitive damages in the absence of evidence that a principal has made good-faith efforts to prevent his agent's discriminatory behavior. *Alexander v. Riga*, 208 F.3d 419, 432-34 (3d Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 546 (1999) (applying this rule under Title VII); *United States v. Habersham Properties, Inc.*, 319 F. Supp. 2d 1366, 1376 (N.D. Ga. 2003) (same).

Defendant Bahr is liable for both compensatory and punitive damages for the conduct of his agent, Defendant GumBayTay, as at the time Defendant GumBayTay used the power of his

4

authority as property manager to harass the Plaintiff, he was acting in a managerial capacity and within the scope of his employment. As manager of Defendant Bahr's rental property, Defendant GumBayTay was presumably empowered by Defendant Bahr to set and collect rent, maintain properties, and undertake evictions of tenants when appropriate. In raising the rent when the Plaintiff refused to provide sexual favors, implicitly conditioning necessary repairs to her apartment on the provision of sexual favors, and threatening her and her children with eviction and homelessness on the basis of such refusal, Defendant GumBayTay was acting within the scope of his managerial authority. Nor is there any evidence that Defendant Bahr made good faith efforts to prevent Defendant GumBayTay from discriminating. Defendant Bahr is thus vicariously liable for both compensatory and punitive damages based on the actions of his agent, Defendant GumBayTay.

### III. The Amount of Compensatory and Punitive Damages Sought by the Plaintiff are Appropriate and Reasonable Given the Circumstances.

On or about October 1, 2006, the Plaintiff entered into a one-year residential lease agreement.[1] The lease was signed by the Plaintiff and Defendant GumBayTay, d/b/a Elite Real Estate Consulting Group, who was acting as agent of the lessor Defendant Bahr. The lease indicated that the monthly rent for the property, located at 964 North Gap Loop, Montgomery, Alabama, would be $450. On or about October 7, 2006, the Plaintiff, her mother Jennette Boswell, and the Plaintiff's four children moved into the house she had rented from Defendants.

From the beginning of her tenancy, Defendant GumBayTay repeatedly made unwelcome sexual advances toward the Plaintiff, all of which she refused. On multiple occasions he threatened to increase her rent if she did not have sex with him and repeatedly invited her to take trips or go on dates with him. He asked her when she would come see him to begin "working

---

[1] The following factual recitation is drawn from the attached Declaration of Yolanda Boswell and/or the Amended Complaint.

5

on" her portion of the rent and asked her what the words "Sugar Daddy" meant to her. On another occasion, he asked her when she would begin "work on [her] sugar daddy account." Defendant GumBayTay also implicitly conditioned repairs to the Plaintiff's home upon her provision of sexual favors. After moving into the house, the Plaintiff spoke to other previous tenants and learned that they had been subjected to the same or similar behavior by Defendant GumBayTay.

On January 19, 2007, when the Plaintiff had refused his advances over a period of several months, and shortly after the Plaintiff had threatened to bring sexual harassment charges against him, Defendant GumBayTay left five handwritten pages on her door that indicated his intent to evict her from the subject property. Attached to these handwritten pages was a modified lease agreement. Defendant GumBayTay had changed the section marked "rent payments" to require the Plaintiff to pay $550 in rent per month, and had initialed next to the change. This unilateral change in the rental agreement was made after the Plaintiff repeatedly refused his sexual advances. The Plaintiff refused to sign this new lease. The repeated suggestion that the Plaintiff barter sex for lower rent caused the Plaintiff great distress, horror and humiliation, especially given that she had originally understood Defendant GumBayTay to have provided her a reasonable rent based on his sympathy for her situation as a single mother struggling to make ends meet.

On February 2, 2007, the Plaintiff received a three-page document from Defendant GumBayTay pledging to address the concerns of tenants in a more timely manner, with the caveat that "you must keep in touch with me if you expect this type of response." While the document highlighted the tenants' responsibility to pay rent on time, it noted that there was always a solution to late rental payments or nonpayment of rent if the tenant contacted Mr.

GumBayTay. The Plaintiff understood this document to mean that Defendant GumBayTay would take steps to evict her if she did not either pay the increased rent or reach out to Defendant GumBayTay socially and acquiesce to his sexual advances. She feared that she and her family might soon be faced with homelessness as a result of Defendant GumBayTay's retaliatory actions.

During the Plaintiff's tenancy, Defendant GumBayTay repeatedly refused to make essential repairs to the Plaintiff's apartment, apparently in retaliation for her refusal to succumb to his advances. For instance, he did not repair leaking or overflowing toilets and sinks, causing excessive water bills, property damage, and great inconvenience. Furthermore, her air conditioning has not worked for many months, and she was eventually forced to purchase a window unit from a friend for $50 and to relocate her children to a family member's apartment during the hottest days. As a result, she has borne child care costs as well as separation from her children. Defendant GumBayTay's only response to requests to make the repairs that he was obligated to make under the lease was to suggest that the Plaintiff should move out.

After filing this action, Defendant GumBayTay began to stalk the Plaintiff in a way that further increased her emotional distress. She has seen him drive by her house constantly, and he appeared to know when she was home. Her friends told her on several occasions that he was parked across the street from her house for a lengthy period of time, even though her street is a dead-end street and Defendant GumBayTay does not, to the Plaintiff's knowledge, manage any other properties on that street. Moreover, either Defendant Bahr or Defendant GumBayTay caused the Plaintiff's apartment to be listed as an available apartment on the Montgomery Housing Authority's Section 8 apartment list, and when a friend of the Plaintiff contacted

7

Defendant GumBayTay and professed interest in the apartment, he told the friend that the current occupant would probably be moving out soon.

In summary, through his persistent sexually harassing behavior, by his attempts to evict the Plaintiff, and by his refusal to undertake necessary maintenance of her home when she refused his advances and asserted her rights to housing free from such harassment, Defendant GumBayTay repeatedly and egregiously discriminated and retaliated against the Plaintiff. Moreover, these actions were undertaken by Defendant GumBayTay with reckless disregard for the Plaintiff's rights under the law and with malicious intent. These activities caused the Plaintiff, a single mother of limited financial means, great emotional distress, humiliation, and trauma. The stress from the situation led her to miss time from work. She was unable to speak about the harassment and retaliation without crying. She feared that her continued refusal to give into his sexual demands would result in homelessness for herself and her children. She has been forced to live in deplorable conditions as a result of his retaliatory refusal to undertake repairs. She has had difficulty eating and has felt continually exhausted and frustrated as a result of these actions. As set out above, Defendant Bahr is vicariously liable for these actions of his agent.

For these reasons, the Plaintiff is entitled to an entry of judgment against Defendants for compensatory damages for emotional distress in the amount of $50,000 and punitive damages in the amount of $75,000, for a total of $125,000.

**IV. Recent Jury Awards and Confessions of Judgment Support the Amount of Damages Sought by the Plaintiff.**

The following brief outline of recent jury awards and confessions of judgment in comparable housing discrimination cases demonstrates the reasonableness of the compensatory and punitive damages sought by the Plaintiff.[2]

In *Dep't of Fair Housing and Employment v. The 2001 California Street Partnership*, 49 Trials Digest 9th 1, 2005 WL 5061523 (November 1, 2005), a disability discrimination case, the defendant, over a period of years, repeatedly refused to provide a disabled tenant a parking place on the same level as her unit. The jury issued a verdict for plaintiff, awarding **$252,269** in compensatory damages: $33,269 in economic damages and $219,000 in noneconomic damages. The jury also found plaintiff entitled to punitive damages, but did not assess the punitive damages amount.

In *United States v. Cail*, JAS MI Ref. No. 216162WL, 2005 WL 2148404 (E.D. Mich. Feb. 18, 2005), the defendants were found liable for discrimination on the basis of disability under the FHA based on their refusal of a bipolar tenant's request for a waiver of the apartment's no-pet policy so that she could have an emotional assistance dog. The jury awarded plaintiff **$314,209**: $14,209 in compensatory damages and $300,000 in punitive damages.

In *SternJohn v. Kreisler*, 2004 WL 3152970 (D. Minn. 2004), the plaintiffs, African-American tenants in an apartment complex, alleged that from October 1998 (when defendant Kreisler took over managerial duties at the complex), until July 1999 (when they moved out of the complex as a result of Kreisler's actions), they experienced ongoing racial harassment and retaliation, including threatened evictions, refusals to make repairs, racially inflammatory language, and threats against the plaintiffs and other African-American tenants. The court entered a confession of judgment for **$1,050,000**.

---

[2] In fact, several of these cases involved single incidents of discrimination, in comparison to the ongoing harassment and retaliation experienced by the Plaintiff over a period of months.

9

In *United States v. Veal*, 365 F. Supp. 2d 1034 (W.D. Mo. 2004), the United States alleged the defendant landlord sexually harassed multiple female tenants, including verbal sexual advances, unwanted touching, demands of sex in exchange for tenancy, and eviction of female tenants who did not provide sexual favors. The jury awarded **$1,102,804** in compensatory and punitive damages to eleven female tenants, with individual awards ranging from $10,001 to $310,000.

In *Hall v. Lowder Realty*, 263 F. Supp. 2d 1352 (M.D. Ala. 2003), the plaintiff, a black real estate agent, alleged that her referred only black clients and listings in predominantly black listings to her. The jury found for plaintiff on the discriminatory referral claim, awarding **$100,000**: $72,000 in compensatory damages and $28,000 in punitive damages.

In *Graham v. Jackson*, 17 Nat. J.V.R.A. 9:32, 2002 WL 31684731 (S.D. Miss. Mar. 28, 2002), twenty-two female plaintiffs alleged that the defendant landlord had sexually harassed them, including sexual advances and offers of improved living conditions in exchange for sexual favors. The jury returned a verdict of **$451,000** for plaintiffs.

In *Mitchell v. Soleyman*, 49 Trials Digest 5th 2, 2002 WL 31911041 (C.D. Cal. Feb. 22, 2002), the plaintiffs, a family of two white parents, their white biological son, and their adopted African-American son, alleged that defendant refused to rent an apartment to them on the basis of race. The jury found for plaintiffs, awarding each of the four plaintiffs **$125,000**: $50,000 in compensatory damages and $75,000 in statutory damages.

Lastly, in *Szwast v. Carlton Apartments*, 102 F. Supp. 2d 777 (E.D. Mich. 2000), the defendants denied the rental application of plaintiffs — a mother and her two children — because of the presence of children in the household. The plaintiffs were awarded **$403,000**: $3,000 in compensatory damages and $400,000 in punitive damages.

## DAMAGES AND ATTORNEY FEES REQUESTED

In light of the legal standard for awarding compensatory and punitive damages, the extent of Defendants' harassment of and retaliation against the Plaintiff, the above-listed recent jury awards, and the attached declarations in support of an award of attorneys' fees and costs, the damages set forth below are requested for the discrimination and retaliation set out in the Amended Complaint and described above.

<u>Compensatory damages</u>

    Humiliation, embarrassment, and emotional distress    $50,000.00

<u>Punitive damages</u>    $75,000.00

<u>Attorney costs and fees</u>    $10,801.50

_____

**TOTAL:**    **$135,801.50**

## IV. Conclusion

Based on the foregoing, the Plaintiff seeks entry of judgment against Defendants in the amount of $125,000 in damages and $10,801.50 for fees and costs for the discrimination and retaliation described above and set out in the Amended Complaint.

Date: July 9, 2007               Respectfully submitted,

_____/s/_____

Allison E. Neal (NEA008)
American Civil Liberties Union of Alabama
207 Montgomery Street, Suite 910
Montgomery, AL  36106
Tel: 334-265-2754
Fax: 334-269-5666

Emily Martin (EM-2924)
Lenora M. Lapidus (LL-6592)
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

Kenneth J. Lay
Legal Services Alabama, Inc.
PO Box 11765
Birmingham, AL  35202
Tel: 205-397-6540, ext. 102

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July, 2007, I have served the above foregoing pleading and associated exhibits upon the Defendants by placing copies of the same in the U.S. mail, postage prepaid, properly addressed as follows:

| | |
|---|---|
| Jamarlo K. GumBayTay | Matthew W. Bahr |
| 4013 Tiffany Drive | 1569 Amaryllis Circle |
| Montgomery, AL  36110-3003 | Orlando, Florida  32825 |

                                            Signed electronically
                                            /s EMILY J. MARTIN_____
                                            EMILY J. MARTIN
                                            ATTORNEY FOR THE PLAINTIFF