IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| YOLANDA M. BOSWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-cv-0135-WKW |
| | ) | |
| JAMARLO K. GUMBAYTAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Before the court are several pending motions filed by Defendant Jarmarlo K. GumBayTay ("GumBayTay"), Defendant Matthew W. Bahr ("Bahr"), and Plaintiff Yolanda M. Boswell ("plaintiff") which the court will now consider.

### I.  MOTIONS FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

GumBayTay has two identical motions for leave to proceed *in forma pauperis* pending before the court.  (Docs. # 27 & # 39.)  The statute governing proceedings *in forma pauperis* requires the person seeking relief to submit a financial affidavit in order for the court to make a determination of financial qualification.  *See* 28 U.S.C. § 1915.  For example, a sample form and affidavit may be downloaded from the Middle District of Alabama's website, www.almd.uscourts.gov, under the section on commonly used forms by *pro se* litigants. While there is a separately filed "Suggestion of Bankruptcy" (Doc. # 40), neither of GumBayTay's motions for leave to proceed *in forma pauperis* contain an affidavit or any other financial information as required by statute.  *Zaun v. Dobbin*, 628 F.2d 990, 992-93

(7th Cir. 1980) (finding that a terse, unparticularized oath of indigency does not satisfy the affidavit of poverty requirement of the *in forma pauperis* statute). As a result, the court is unable to make a determination of financial qualification, and it is ORDERED that both motions (Docs. # 27 & # 39) are DENIED.

## II.  MOTION FOR STAY DUE TO BANKRUPTCY PETITION

GumBayTay also filed a "Suggestion of Bankruptcy" in which he requests "the instant case be dismissed, placed on administrative docket, or otherwise disposed of through some similar means." (Doc. # 40.) The plaintiff opposes this motion on grounds that her cause of action accrued after the bankruptcy was filed. (Doc. # 41.) GumBayTay's "Suggestion of Bankruptcy" does not cite any statute or case law in support of his broad requests. The court will construe this suggestion as a request for an automatic stay under 11 U.S.C. § 362, which states in part that a bankruptcy petition "operates as a stay . . . of (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced **before** the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a) (emphasis added). As the Fifth Circuit has explained, "[t]he [§ 362] stay simply does not apply to post-bankruptcy events." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985). GumBayTay's latest petition[1] for Chapter 13 bankruptcy was filed on August 27, 2003 (Doc. # 40); the plaintiff entered into the lease agreement over three years later on October 1, 2006, before which her claims had

---

[1] The plaintiff claims GumBayTay has filed for bankruptcy four times in the past fifteen years. (Doc. # 41 at 1.)

not arisen and could not have been commenced.  (Doc. # 1-2.)  Accordingly, GumBayTay's

bankruptcy petition does not trigger the automatic stay provision of § 362, and it is

ORDERED that his motion is DENIED.

### III.  COUNTERCLAIMS AND MOTIONS
### WITHIN GUMBAYTAY'S ANSWER

On August 9, 2007, GumBayTay filed a purported "Answer" (Doc. # 38) in response

to the plaintiff's motion to strike (Doc. # 23) his first answer.   In this filing, GumBayTay

asks the court to (1) find the plaintiff in breach of the lease agreement, (2) grant a request to

terminate the lease, and (3) allow him to file for eviction.  To the extent GumBayTay is

attempting to file counterclaims against the plaintiff, they are hereby STRICKEN as MOOT

due to the agreement of the parties to cancel the lease made during the hearing of July 17,

2007.  GumBayTay also "requests that the Court drop this pending suit on the grounds that

the Plaintiff of said suit deceived the Court into believing that the Defendant in that Case

sexually harassed her."  (Doc. # 38 at 1-2.)  To the extent GumBayTay is moving this court

to dismiss the action for failure to state a claim under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, it is ORDERED that the motion is DENIED.   The plaintiff's factual

allegations are sufficient to state a claim under the Fair Housing Act ("FHA"), especially

when construed in the light most favorable to the plaintiff.

### IV.  MOTION TO SET ASIDE ENTRY OF DEFAULT

Bahr made his first and, to date, only appearance in this matter on July 17, 2007, in

order to file a motion to set aside the entry of default.  (Doc. # 30.)  Rule 55(c) states that

3

"[f]or good cause shown the court may set aside an entry of default." Fed. R. Civ. P. 55(c).

The Eleventh Circuit provides a non-exhaustive list of factors for courts to use in determining

whether good cause exists, including "(1) whether the default was culpable or willful which

entails an assessment of the plausibility of the defaulting party's excuse; (2) whether setting

[the default] aside would prejudice the adversary, (3) whether the defaulting party presents

a meritorious defense, and (4) whether the defaulting party acted promptly to correct the

default." *Hinson v. Webster Indus.*, 240 F.R.D. 687, 690 (M.D. Ala. 2007) (quoting

*Compania Interamericana Export-Import, S.A. v. Compania Dominicana De Aviacion*, 88

F.3d 948, 951 (11th Cir. 1996) (internal quotation marks omitted)).  Of the four factors,

whether the default was culpable or willful is the most important. *Compania*, 88 F.3d at 951-

52 (stating that "if a party willfully defaults by displaying either an intentional or reckless

disregard for the judicial proceedings, the court need make no other findings in denying

relief").   Noting the rarity of "flaunting an intentional disrespect for the judicial process,"

the *Compania* court also defined willful conduct as "when a litigant has been given ample

opportunity to comply with court orders but fails to effect any compliance." *Id.* at 952.

While "[t]he court's discretion is tempered by this circuit's preference for a decision on the

merits with full participation by the parties," *Hinson*, 240 F.R.D. at 690, upon examination

of the guidelines provided by the Eleventh Circuit, particularly the willfulness of the default,

Bahr fails to show good cause for setting aside the entry of default.

4

**A.    Excuse**

The first factor of whether the default was culpable or willful requires an assessment of the plausibility of the defaulting party's excuse.  Bahr's only excuse amounts to an unfamiliarity to the Federal Rules of Civil Procedure.  (Doc. # 30 at 3.)  However, he admits to receiving notice of the lawsuit through the mail, probably at the time he signed for receipt of the summons for the first complaint on February 23, 2007.  (Doc. # 11.)  The summons clearly states that an answer was required to be served on the plaintiff's attorneys within twenty days and that "[i]f you fail to do so, **judgment by default will be taken against you** for the relief demanded in the complaint."  (Doc. # 6 (emphasis added).)  Before his answer was due, Bahr signed for receipt of the court's order granting the plaintiff a preliminary injunction on March 1, 2007.  (Doc. # 14.)   On or about March 5, 2007, Bahr called the plaintiff's attorney and left a message.[2]  The attorney called him back and left a message explaining that he needed to file a response or answer to avoid a default judgment.  (Doc. # 36 at 3.)  Upon expiration of the twenty days, after receiving notice through the mail twice regarding the lawsuit, and a phone call to and from the plaintiff's attorneys, Bahr had still yet to respond or appear.

The plaintiff filed an amended complaint on May 4, 2007, and served it on Bahr through U.S. mail.  (Doc. # 18.)  Shortly thereafter, on or about May 10, 2007, Bahr again phoned plaintiff's counsel.  The next day, plaintiff's attorneys returned his call and warned

---

[2]  The information regarding the phone calls between Bahr and the plaintiff's attorneys is supported by affidavits supplied by the plaintiff's attorneys and has not been contested by Bahr.

Bahr for a second time that he needed to file a response or answer to avoid a default judgment. (Doc. # 36 at 3.)  On or about June 6, 2007, plaintiff's attorneys again contacted Bahr via telephone and warned him for the third time that he would have to appear or face a default judgment.  (*Id.*)  At the time GumBayTay filed his untimely answer on June 26, 2007 (Doc. # 19), Bahr had still yet to respond or appear.  The plaintiff then applied for an entry of default on June 27, 2007 (Doc. # 20), against Bahr, the only party yet to respond, which the clerk entered on June 29, 2007.  (Doc. # 21.)

On July 9, 2007, the plaintiff moved for entry of default judgment against Bahr and GumBayTay.  (Doc. # 23.)  Finally, three days later and still no response from Bahr, the court had to order Bahr to show cause no later than 12:00 p.m. on July 16, 2007, why the motion for default judgment should not be granted, and set a hearing on the motions for July 17, 2007.  (Doc. # 26.)  With a deadline of July 16 to file a response, Bahr chose to wait until the day before to finally contact an attorney to represent him.  (Mot. Hr'g, July 17, 2007.)  Due to his late hire, Bahr's attorney was unable to meet the deadline and the court allowed him to file it before the hearing began on July 17.   (Doc. # 30.)

Despite receiving two complaints, a summons with clear language warning against the dangers of non-response, copies of court orders, and three explicit warnings over the telephone, Bahr chose to ignore the obvious and only filed a response almost five months after first learning of the litigation (and only then after expressly ordered to do so by the court, and even then his counsel was forced to request an extension).  Bahr received ample

opportunity to comply with court orders but failed to effect any compliance, which is the exact definition of a culpable and willful default provided by the *Compania* court.

**B.    *Prejudice to the Adversary***

The inactions of Bahr have delayed the litigation.  However, the plaintiff's lease has already been cancelled, she has been allowed to seek new housing, and an injunction has been entered on her behalf.  Furthermore, procedurally, the case is still in its early stages as a scheduling order has yet to be issued and discovery has yet to commence.  *See Hinson*, 240 F.R.D. at 693 (finding no prejudice to the adversary where the case was in its early procedural stages).  While there may be some prejudice to the adversary, it is not substantial.

**C.    *Meritorious Defense***

The only defense proffered by Bahr is that GumBayTay is not an agent, employee, or representative of his.  Facts already in the record dispute this assertion.  The lease identifies GumBayTay as Bahr's agent.  GumBayTay accepted rent and security deposits on Bahr's behalf.  A recent list of houses available at the local housing authority office, including the one owned by Bahr and leased to the plaintiff, listed GumBayTay as the contact person. Various Section Eight housing forms list GumBayTay as Bahr's agent or payee. GumBayTay's actions show that he was taking directions from Bahr. For example, it appears GumBayTay was expected to provide Bahr with a signed lease for $550 per month in rent, and was not free to charge what he wished.  Also, GumBayTay was to send copies of the finalized lease to Bahr. On the record currently before the court, it appears that GumBayTay

7

was Bahr's agent.  At this stage, the agency defense does not appear to be meritorious.[3]

**D.    *Acting Promptly to Correct Default***

Bahr's actions upon the entry of default are covered above in great detail in the analysis of his excuse for defaulting and there is no need to repeat them here.  Suffice it to say, over half of a month elapsed between the entry of default and when he secured counsel to represent him in this matter on the day before the court's deadline to respond expired. Even then, Bahr could not make the deadline and had to seek a brief extension.  The court does not view his actions as those of someone acting promptly to correct an entry of default.

**E.    *Conclusion***

While the court is extremely reluctant to prevent a party from proceeding to adjudication on the merits, it is difficult to conceive of many other circumstances where a party could make such a poor showing of good cause as Bahr, absent a party who completely fails to appear in an action.  The standard is liberal, "but not so elastic as to be devoid of substance."  *Compania*, 88 F.3d at 951 (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989) (internal quotation marks omitted)).  Therefore, upon application of the *Compania* factors, Bahr has failed to show good cause and his motion to set aside the entry of default is DENIED.  The plaintiff's motion for entry of default judgment against Bahr is addressed below.

---

[3]  The FHA provides for vicarious liability, which "ordinarily make[s] principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003).   As a result of his status as Bahr's agent, GumBayTay was authorized to negotiate the lease, manage the property, and empowered to undertake evictions.

## V. MOTION TO STRIKE GUMBAYTAY'S ANSWER AND FOR DEFAULT JUDGMENT AGAINST BOTH DEFENDANTS

### A.    *Defendant GumBayTay*

Plaintiff filed a Motion to Strike Defendant GumBayTay's Answer and for Entry of Default Judgment Against Defendants GumBayTay and Bahr on July 9, 2007.  (Doc. # 23.) The plaintiff argues that GumBayTay's answer was untimely and unresponsive as it was filed on June 26, 2007[4] - over fifty days after her amended complaint was filed - and fails to address the allegations of the amended complaint.  (Doc. # 24-12 at 1-2.)  As for its timeliness, the court agrees that GumBayTay's answer was untimely.  However, Rule 6(b)(2) of the Federal Rules of Civil Procedure allows a court to enlarge the period of time a party has to meet a deadline "upon motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect."  Fed. R. Civ. P. 6(b)(2).

GumBayTay makes no explicit motion, but considering the liberal reading given to *pro se* pleadings and the less stringent standards to which they are held, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), and the court's inherent power to manage its docket, the court deems his second "Answer" (Doc. # 38) to meet the motion requirement of Rule 6(b).  This is because the Answer was explicitly filed as a response to the plaintiff's motion to strike and it states that the plaintiff's "Motion to Strike Defendant's Answer should not be allowed."  (Doc. # 38.)  *See Yesudian ex rel. United States v. Howard*

---

[4]  Although the plaintiff claims the answer was filed on June 27, 2007, the docket shows that it was actually filed on June 26, 2007.  (Doc. # 19.)

*Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (affirming a district court's enlargement of time for a litigant to make a filing notwithstanding the lack of a motion specifically requesting such relief); *see also Godoy v. Office of Bar Admissions*, No. 05-0675, 2006 WL 2085318, at *3 (N.D. Ga. July 25, 2006) (reviewing precedent illustrating "that absent serious, actual prejudice to another party, district courts, often with circuit approval, have exercised the inherent authority to manage their docket so as to grant enlargements of time even when such extensions fall outside the literal scope of Rule 6(b)"); *Crutcher v. Coleman*, 205 F.R.D. 581, 586 (D. Kan. 2001) (allowing a defendant to file an answer six months after the original deadline, notwithstanding her failure to provide an adequate reason, where failure caused no prejudice to the plaintiff).

Furthermore, the plaintiff is not substantially prejudiced by the delay in filing GumBayTay's complaint since her lease has already been cancelled and the case is still in a preliminary stage.  Because of the liberal construction given to *pro se* pleadings and the inherent power of the court to manage its docket, the court declines to take such a drastic remedy as striking the answer as suggested by the plaintiff.  Therefore, it is ORDERED that the plaintiff's motion to strike (Doc. # 23) is DENIED.

As for the responsiveness of GumBayTay's answer, the court finds that his answer leaves much to be desired and fails to specifically address the allegations contained in the plaintiff's amended complaint.  GumBayTay is hereby ORDERED to file an amended answer **on or before October 26, 2007,** that, among other things, specifically responds to the

10

allegations made in the plaintiff's amended complaint (Doc. # 18) by referring to each separate numbered paragraph with a statement of admission, denial, or insufficient belief as to each.

## B.    *Defendant Bahr*

The plaintiff has now moved for entry of default judgment against Bahr on two occasions: once on July 9, 2007 (Doc. # 24-12 at 12), and again on August 9, 2007 (Doc. # 36 at 10).  Because the court declines to strike GumBayTay's answer and enter default judgment against him, default judgment against Bahr is inappropriate at this time.  Rather, the proper procedure when confronted with default judgments in actions involving multiple defendants with closely related defenses is to apply the rule developed in *Frow v. De La Varga*, 82 U.S. 552 (1872), so as to avoid inconsistent results.  10A Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 2690 (3d ed. 1998).  In *Frow*, the Court stated:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

*Frow*, 82 U.S. at 554.  Therefore, "entry of judgment . . . should await an adjudication of the liability of the nondefaulting defendants."  Wright *et al.*, *supra*, § 2690.  As Bahr's exposure

to liability in this matter is vicarious through the actions of his agent, an inconsistent result would occur if default judgment were granted against Bahr now and then GumBayTay were later adjudged not liable for the plaintiff's claims.  Therefore, at this stage of the litigation, it is ORDERED that the two motions for default judgment against Bahr (Docs. # 24-12 & # 36) are DENIED.

## VI.  MOTION FOR SANCTIONS AND MODIFICATION OF INJUNCTION

Also before the court is the plaintiff's Motion for Sanctions and Expedited Modification/Enforcement of Preliminary Injunction.  (Doc. # 22.)   The motion for modification of the preliminary injunction requested the termination of the plaintiff's lease and permission to relocate.  During the motion hearing held on July 17, 2007, the parties reached an agreement for the lease to be terminated and for the plaintiff to move out.  Therefore, the motion for modification of the preliminary injunction is DENIED as MOOT.  As for the plaintiff's motion for sanctions (Doc. # 22), it is ORDERED that the plaintiff shall give written notice to the court **on or before October 29, 2007**, regarding whether she still wishes to pursue her sanctions motion and to conduct a hearing on the issue.

DONE this 12th day of October, 2007.

_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.   **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a)   **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b)   **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c)   **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d)   **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e)   **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

<em>Rev.: 4/04</em>

2.    <u>Time for Filing</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>Format of the notice of appeal:</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>Effect of a notice of appeal:</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).