UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| YOLANDA M. BOSWELL,<br><br>Plaintiff,<br><br>v.<br><br>JAMARLO K. GUMBAYTAY,<br>D/B/ATHE ELITE REAL ESTATE<br>CONSULTING GROUP<br><br>AND<br><br>MATTHEW K. BAHR,<br><br>        Defendants. | Civil Action No. 2:07-CV-135-WKW-TFM<br><br>Honorable W. Keith Watkins, U.S.D.J.<br><br>**EVIDENTIARY SUBMISSION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO HER CLAIMS** |

Comes now the Plaintiff Yolanda Boswell and submits a copy of the unpublished decision *Shellhammer v. Lewallen*, C82-689 (N.D. Ohio 1983), which was cited in the Plaintiff's previously submitted Motion for Summary Judgment As To Her Claims.

Date:  August 14, 2008

Respectfully submitted,

 /s/ Faith Cooper

Faith R. Cooper
Central Alabama Fair Housing Center
1817 West Second Street
Montgomery, AL  36106
(334) 263-4663

Allison E. Neal (NEA008)
American Civil Liberties Union of Alabama
207 Montgomery Street, Suite 910

Montgomery, AL  36106
Tel: 334-265-2754
Fax: 334-269-5666

Kenneth J. Lay
Legal Services Alabama, Inc.
1820 7th Ave. North
Birmingham, AL  35203
Tel: 205-397-6540, ext. 102

Lenora M. Lapidus (LL-6592)
Emily Martin (EM-2924)
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

**Attorneys for Plaintiff Yolanda M. Boswell**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2008, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the following:


Benjamin E. Schoettker (SCH091)
Charles W. Barfoot (BAR123)
Barfoot & Schoettker, L.L.C.
608 South Hull Street
Montgomery, AL  36104


Alfred Newell
Attorney At Law
P.O. Box 101432
Birmingham, AL 35210


                                              Signed electronically
                                              <u>s/ Faith Cooper</u>
                                              Faith Cooper
                                              Attorney for Plaintiff
                                              Yolanda M. Boswell

RECEIVED
NOV 23 1983

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FILED
1983 NOV 22 PM 2:55
CLERK
U.S. DISTRICT COURT
NORTHERN DISTRICT
TOLEDO, OHIO

Thomas Shellhammer, et al,

      Plaintiffs,

vs.

Norman Lewallen, et al.,

      Defendants.

C 82-689

Memorandum and Order

    This is a civil rights case in which the parties have consented to the entry of final judgment by the undersigned. In their complaint the plaintiffs allege that the defendants have violated the Fair Housing Act, 42 U.S.C. § 3601 et seq., by discriminating on the basis of sex. The gravaman of the complaint is that the defendant Norman Lewallan, with the acquiescence of his wife, the defendant Jacqueline Lewallen, conditioned the rental of premises owned by them upon the performance by female tenants of sexual acts with Mr. Lewallen. If the tenants refused, then, according to the allegations of the complaint, the tenants were evicted.

    The complaint was filed as a class action, and a timely motion for class certification was also filed. The defendants never responded to the class action motion, and the court was unaware of the pendency of said motion until shortly before the trial commenced. Over objection of the plaintiffs, trial was held solely on the complaint of the named plaintiffs, and further proceedings regarding the class action motion have been held in abeyance pending determination of the issues between

the named plaintiffs and the defendants.

The named plaintiffs are Tammy and Thomas Shellhammer. In essence, they claim that the defendant Norman Lewallen solicited Mrs. Shellhammer to pose for nude photographs and, later, to have sexual intercourse with him. Upon her refusal to accede to either of these requests, plaintiffs allege, eviction proceedings were brought against them on the pretextual basis that they had not paid their rent.

The named plaintiffs also allege that the conduct of the defendant Lewallen against Mrs. Shellhammer and the later eviction proceedings are representative of a pattern and practice of similar conduct on Mr. Lewallen's part towards several of his female tenants. On their own behalf, and on behalf of the class which they purport to represent, the named plaintiffs seek equitable and legal relief.

At the trial of the named plaintiffs' complaint against the defendants, several former tenants, in addition to the named plaintiffs, were called to testify. These witnesses testified about Mr. Lewallen's activities and actions towards them while they were tenants in property owned by him and his wife. This testimony described requests to pose for nude photographs, acceptance of sexual favors in lieu of payment of security deposits, unconsented entry into apartments and solicitation of other sexual favors. Some of the witnesses testified that they had acquiesced in some of these requests, while others rebuffed them. Following such rejection, eviction proceedings were brought; often, however, the stated basis for such action was non-payment of rent.

The plaintiffs base their complaint upon cases developed under the equal employment opportunity statute, 42 U.S.C. § 2000e et seq. (Title VII). During the past ten years courts have accepted the contention

that sexual harassment at the workplace constitutes employment discrimination on the basis of sex. See, e.g., Katz v. Dole, 709 F.2d 251 (4th Cir. 1983); Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982). Though this concept appears to be generally accepted under Title VII, the equal employment statute, see generally 1 Larsen, Employment Discrimination 8-99 (1975)("the universal rule now is that . . . sexual harassment on the job is employment discrimination within the meaning of Title VII"), it has yet to be applied under Title VIII, the Fair Housing Act.

Plaintiffs encounter, therefore, an initial question about the applicability of the sexual harassment doctrine, as established under Title VII, to cases brought under Title VIII. In opposition to adopting this doctrine in the context of a fair housing case, the defendants make two general arguments: first, that no other court has taken such step, and second, that the focus of the fair housing statute differs from the purpose of the equal employment act.

For several reasons, these are not very persuasive arguments. Sexual harassment is not specifically addressed in either Title VII or its legislative history. Nonetheless, courts have had little difficulty in interpreting and applying Title VII to claims of such harassment, and concluding that such activity falls within the broad reach of that statute. At one time, there were no decisions to that effect; that has not, however, inhibited judicial development of the doctrine.

Defendants' second argument focuses on the fact that Title VII prohibits discrimination in employment, whereas Title VIII prohibits discrimination in housing. This argument cannot avoid the fact that both statutes are designed to eradicate the effects of bias and

prejudice. Their purposes are, clearly, the same; only their field of operation differs. The simultaneity of purpose between Title VII and Title VIII was recently emphasized by Chief Judge Battisti of this District in United States v. City of Parma, 494 F. Supp. 1049 (N.D. Ohio 1980), aff'd, 661 F.2d 1100 (6th Cir. 1982):

> Like Title VII of the Civil Rights Act of 1964, the Fair Housing Act was enacted to ensure the removal of artificial, arbitrary, and unnecessary barriers when the barriers operate invidiously to discriminate on the basis of impermissible characteristics. Congress designed it to prohibit "all forms of discrimination, sophisticated as well as simple-minded." The Act, therefore, is to be construed generously to ensure the prompt and effective elimination of all traces of discrimination within the housing field.
>
> Section 804(a) of the Fair Housing Act prohibits all practices which make unavailable or deny housing to persons because of race, color, religion, sex or national origin. This broadly drafted section reaches every practice which has the effect of making housing more difficult to obtain on prohibited grounds.

494 F. Supp. at 1053 (citations omitted).

Judge Battisti's decision echoes the Sixth Circuit's quotation, in McDonald v. Verble, 622 F.2d 1227, 1234 (6th Cir. 1980), from the Eighth Circuit's decision in Williams v. Matthews Co., 499 F.2d 819, 826 (8th Cir. 1974):

> [T]he statutes prohibit all forms of discrimination, sophisticated as well as simple-minded, and thus disparity of treatment . . . , burdensome application procedures, and tactics of delay, hindrance, and special treatment must receive short shrift from the courts.

In view of the policy of broad interpretation of the Fair Housing Act, the statute's remedial purposes, and the absence of any persuasive reason in support of the defendants' contentions that sexual harassment is not actionable under the Act, I conclude that it is entirely appropriate

to incorporate this doctrine into the fair housing area. Defendants' motion to dismiss on the basis that no cause of action has been stated, made at the close of the plaintiffs' case, and renewed at the conclusion of the trial, should, therefore, be overruled.

Guidance for defining the elements of sexual harassment in the context of this case can be found in the Eleventh Circuit's recent and exhaustive opinion in Henson, supra. In that case the court described two basic varieties of actionable consequences from conduct generally referred to as sexual harassment: a) creation of an "offensive environment," and b) extracting or seeking to extract "sexual consideration in exchange for job benefits." 682 F.2d at 908 n.18. In the context of housing, sexual harassment would consist of either creating an "offensive environment," or conditioning tenancy, or continued tenancy, upon sexual consideration.

Plaintiff Tammy Shellhammer asserts that she was subjected to both forms of sexual harassment during her tenancy in the defendants' building. First, she contends that the request to pose nude and the later solicitation of sexual intercourse created an offensive environment. Second, she asserts that the defendants' actions in seeking to evict her and her husband were motivated by her refusal to grant sexual favors in response to her landlord's requests.

In Henson the court defined the elements of each claim. Id. at 901-09. These are readily adaptable to claims of sexual harassment in housing, and I conclude that the elements of each of plaintiff's claims may be expressed as follows.

First, the hostile environment claim consists of five elements:

    1. Membership in the protected group.

2. Being subjected to unwelcome and extensive sexual harassment, in the form of sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, which has not been solicited or desired by the plaintiff, and which is viewed as undesirable or offensive.

3. The harassment was based upon sex; i.e., but for the plaintiff's gender, the harassment would not have occurred.

4. The harassment makes continued tenancy burdensome and significantly less desirable than if the harassment were not occurring, and

5. If vicarious liability is asserted, the plaintiff must show that the owner knew or should have known about the particular harassment and failed to remediate the situation promptly.

Like the court in Henson, id. at 904, I am persuaded that plaintiff must show, in order to establish her claim that the defendant's conduct created an offensive environment, that the landlord's actions were pervasive and persistent. An occasional statement or request would not suffice. However, once the requisite frequency and pervasiveness have been established, then, in my opinion, the effect of that conduct should be ascertained on a subjective, rather than an objective standard. Conduct or statements which one person finds intolerable might be viewed as simply annoying or even amusing by another person. In view of the personal and subjective nature of the tenant's response, she should be able to prevail upon a showing that her tenancy was made burdensome for

her, and significantly less desirable than if the harassment had not occurred. Liability should not be defeated, however, on the basis that someone else felt, or a reasonable person might have felt a different reaction to the landlord's conduct.

With reference to the second type of sexual harassment claim (namely, that the landlord conditioned tenancy or continued tenancy upon the extension of sexual consideration), the following elements must be established by the plaintiff in order to prevail:

1. Membership in the protected group;

2. A demand for sexual favors, which has not been solicited or desired by the tenant (or prospective tenant);

3. The request was based upon the plaintiff's sex (i.e., but for the plaintiff's gender, the request would not have been made);

4. The plaintiff's reaction to the request affected one or more tangible terms, conditions, or privileges of tenancy, in that she was denied or deprived of tenancy or a substantial benefit thereof as a result of her response to the landlord's demand for sexual favors; and

5. If vicarious liability is asserted, the plaintiff must show that the owner knew or should have known about the particular harassment and failed to remediate the situation promptly.

Where the plaintiff's claim is that her reaction to sexual harassment had an adverse effect upon her tenancy, then, in my opinion, she need not show that the landlord's demands were frequent. If she establishes that her rejection of a single request for a sexual favor led to a reaction by the landlord which adversely affected a tangible

component of her tenancy, then she should prevail.

With reference to plaintiff's first claim--that the landlord's conduct subjected her to a hostile environment as a result of her sex, it is clear that she has failed to satisfy the elements of this claim as defined above. She points to two requests during the three or four months of her tenancy. This does not amount to the pervasive and persistent conduct which is a predicate to finding that the sexual harassment created a burdensome situation which caused the tenancy to be significantly less desirable than it would have been had the harassment not occurred. The plaintiffs, therefore, are not entitled to relief on the first aspect of her claim.

I find, however, that the plaintiffs have established the second aspect of their claim--namely, that as a consequence of Mrs. Shellhammer's rejection of Mr. Lewallan's sexual advances, eviction proceedings were instituted against the plaintiffs.

In reaching this conclusion, I have adapted the conventional Green-Burdine sequence, see McDonnell-Douglas v. Green, 411 U.S. 792 (1973) and Burdine v. Texas Dep't of Community Affairs, 450 U.S. 258 (1981), to the order and burden of proof in this case. First, the plaintiffs had the burden of establishing a prima facie case. Then the burden was upon the defendants to articulate a legitimate, non-discriminatory reason for their actions. Finally, the burden remained on the plaintiffs to prove that the articulated reason was not, in fact, the reason which motivated the defendants.

There can be no question, in my opinion, that the plaintiffs met their initial burden of establishing a prima facie case that their eviction had been motivated by Mrs. Shellhammer's response to the defendant's sexual advances. In addition to the plaintiff's testimony

in support of this contention, there was the testimony of several other former tenants which suggested a pattern or practice of conduct.

At this point, the defendants had the burden of articulating a legitimate, non-discriminatory reason. They met this burden by coming forward with evidence, which, if believed, would establish that the plaintiffs willfully defaulted on the July, 1981, rent obligation. Unless plaintiffs failed to meet the burden of proving that this was not, in fact, the motivating factor, then the defendants would be entitled to judgment.

I am persuaded, however, that the plaintiffs met their ultimate burden of proving that the articulated reason was not the exclusive factor, and that the eviction proceedings were, to a significant extent, brought in response to Mrs. Shellhammer's rejection of Mr. Lewallen's request that she pose in the nude, and his later response that she have sex with him.

At the outset, it should be noted that I credit the testimony of the parties that there was a dispute on or about July 1 ("rent day") about whether the defendants were responsible for providing a working refrigerator. The merits of this dispute, or the underlying arrangement between the parties is not material. It is clear that, for whatever reason, rent was not paid and accepted on July 1st. Therefore, the plaintiffs were technically in default; consequently, eviction proceedings could be lawfully brought against them, and the landlord, under Ohio law, was not obligated to accept any subsequent tender of rent. O.R.C. § 5321.03.

This is however, a discretionary decision: certainly a landlord can accept a late rent payment as a cure for any default, and he can thereafter elect to leave the tenants and their tenancy undisturbed by

legal action. Mr. Lewallen chose to do otherwise. Though he could, under Ohio law, have done so lawfully, I find that he was motivated, at least in part, by Mrs. Shellhammer's refusal to accede to his sexual advances.

This finding is based upon the evidence of record which shows that Mr. Lewallen's conduct in this instance is representative, and follows a pattern of action of his part in similar situations. The testimony of the plaintiffs' witnesses showed that requests for sexual favors were a recurrent element of Mr. Lewallen's landlordship. That testimony also shows that, when such requests were rejected, eviction proceedings or other retaliatory actions ensued.

Several witnesses testified that Mr. Lewallen offered to make "arrangements" in lieu of a security deposit. At least two of the witnesses--Michael and Reasoner--acquiesced. Ms. Michael testified, however, that Mr. Lewallen reneged on his initial agreement, which had caused her to refuse to pay rent. This, in turn, led to her eviction. Similarly, Ms. Reasoner testified that after she had initially acquiesced in Mr. Lewallen's "arrangements" for the security deposit, he changed the arrangements by offering to pay her five or ten dollars, rather than giving her a further rebate on the security deposit. She, likewise, was evicted for nonpayment of rent, which she acknowledged but attributed to "getting tired" of Mr. Lewallen.

Another witness, Ms. Upchurch, testified that she too had gone to bed with the defendant rather than paying the security deposit. It does not appear, however, that further requests were either made or rejected. Though Ms. Upchurch declined later requests by Mrs. Lewallen for the security deposit, there is no indication that eviction proceedings were brought against her. Instead, according to her testimony, she moved

voluntarily.

A comparison of the sequence of events relating to Ms. Michael and Ms. Reasoner with the testimony of Ms. Upchurch provides support for the plaintiffs' claim that the eviction proceedings against them were motivated by Mrs. Shellhammer's refusal to accede to the defendant's request for sexual favors. Ms. Michael and Ms. Reasoner, in time, rebuffed similar requests; thereafter eviction proceedings were instituted. Ms. Upchurch, like Ms. Michael and Ms. Reasoner, initially acceded as well. Because no further requests, apparently, were made, none were refused. And her tenancy continued undisturbed until she voluntarily vacated her apartment.

The testimony of other witnesses produced by the plaintiffs also supported their contentions. Ms. Jackson testified that two weeks after she had moved in, she was propositioned, and refused the defendant's request. Thereafter, though she offered to pay her rent following receipt of her ADC check, her offer was refused by the defendant, who had told her previously that he did not want her on his premises. Eviction proceedings were commenced, as were self-help repossession techniques.

A similar sequence was described by Ms. Miles, who was asked to pose for pictures, which were to be taken after she had "satisfied" the defendant. She refused both requests, which had been made shortly after she had become a tenant. Thereafter, she was told to move by the defendant; she refused to pay rent, and following filing of an eviction suit, she left.

Another tenant, Ms. Miles, who had declined a request to "fool around" with the defendant, was thereafter notified to quit when she failed to pay the following month's rent on its due date. She testified that her ADC check was late that month, which accounted for her failure

to pay her rent when due. Though her check later came, proceedings were instituted against her, and she moved out without paying rent for that month.

Delay in receiving her ADC check also caused Ms. Kennedy to fail to pay her rent on the first of the month. Three weeks earlier she had hit the defendant after he had fondled her. Her proffer of the following month's rent, made by her after her check had come, was refused, and she was forced to vacate her apartment. Similarly, Ms. Kincaid testified that after she had rebuffed the defendant's sexual passes her things had been moved out of her apartment on the first of the following month, though she was willing to pay her rent for that month.

In my opinion, the testimony of these witnesses establishes a pattern of conduct on the part of Mr. Lewallen whereby he would solicit sexual favors of various kinds from tenants. In time, those who refused would be subjected to eviction proceedings. In many instances, though they would be in technical default, they were willing and able to become current on their rent obligations. In some of those instances the failure to pay rent when due was caused by no fault on their part—ADC checks arrived late.

In light of this evidence, it is apparent that the eviction proceedings brought against the plaintiffs were motivated in part by Mrs. Shellhammer's refusal to accede to the defendant's requests that she pose in the nude and have sex with him. Though these requests were made several weeks apart, and the later request also predated the eviction proceedings by more than a month, nonetheless, in light of the other evidence of record, I find that the eviction was motivated in part by Mrs. Shellhammer's response to the defendant's sexual advances.

I also find that Mrs. Lewallen, as a co-owner of the properties, and as an active participant in the collection of rents and institution of eviction proceedings, is, in light of her knowledge of her husband's conduct, vicariously liable. Several witnesses told her about her husband's actions, but she declined to take any remedial steps, though in a position to do so as general manager of the properties. Consequently, she is jointly liable as a result of her acquiescence in her husband's discriminatory conduct.

In light of the foregoing, I make the following factual findings:

1. The plaintiff, Mrs. Shellhammer, is a member of the protected group.

2. The defendant, Mr. Lewallen, sought unsolicited sexual favors from Mrs. Shellhammer; she, in turn, rejected these requests;

3. Those requests were motivated by Mrs. Shellhammer's sex, female.

4. Following such rejection, Mr. Lewallen caused eviction proceedings to be instituted against the plaintiffs;

5. Mr. Lewallen's motivation in bringing such proceedings was in part based upon Mrs. Shellhammer's refusal to acquiesce in his requests for sexual favors;

6. The defendant Mrs. Lewallen was aware of Mr. Lewallen's practices with reference to his female tenants; she was in a position, but failed to take steps to remedy such conduct and its effects.

In light of the foregoing, I conclude, as a matter of law, that the defendants have discriminated against the plaintiff, Mrs. Shellhammer, on the basis of her sex in violation of 42 U.S.C. § 3604(b). They are,

consequently, liable to her for damages under the statute.

I conclude further that both Mrs. Shellhammer and her husband, Mr. Shellhammer, have standing to maintain this action. He has established that, as a result of the actions taken by Mr. Lewallen against his wife, he, likewise, "has suffered a 'distinct and palatable injury.'" <u>Havens Realty Corp. v. Coleman</u>, ___ U.S. ___, 102 S. Ct. 1114, 1121 (1982).

In light of the foregoing, it is

ORDERED that judgment as to liability be entered on behalf of the plaintiffs and against the defendants; and it is

FURTHER ORDERED that this cause be set for a pretrial conference on Friday, December 9, 1983 at 8:30 a.m. before the undersigned for the purpose of setting further proceedings in this cause.

SO ORDERED.

_____
United States Magistrate