IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| YOLANDA M. BOSWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-135-WKW[WO] |
| | ) | |
| JAMARLO K. GUMBAYTAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER:**
**Defendant Jamarlo K. GumBayTay's Civil Contempt**

On March 24, 2009, the court held an evidentiary hearing and heard oral argument on several pending motions (Order (Docs. # 127 & 132)), one of which was Plaintiff Yolanda M. Boswell's ("Boswell") Motion for Sanctions (Doc. # 22) against Defendant Jamarlo K. GumBayTay ("GumBayTay") for civil contempt for violations of the court's Order Granting Injunctive Relief (Doc. # 10).[1] After hearing testimony and evidence, the court orally granted Ms. Boswell's motion and found Mr. GumBayTay guilty of civil contempt for violations of the Order Granting Injunctive Relief. On March 27, 2009, the court indicated that an Order

---

[1] In an Order entered on January 18, 2008, the court indicated that a contempt hearing pertaining to Mr. GumBayTay's alleged violations of the court's Order Granting Injunctive Relief (Doc. # 10) would be "held in conjunction with the jury trial of the matter, outside the presence of the jury, with the procedure to be set in the final pre-trial order." (Doc. # 51 ¶ 1); (*see also* Docs. # 22, 44 & 51.) For the convenience of the parties and after fair and ample notice to Mr. GumBayTay (Docs. # 127 & 132), this hearing instead was held in conjunction with the other matters addressed at March 24, 2009 evidentiary hearing. (Order (Doc. # 127).) In this opinion, the transcript from that hearing (Doc. # 142) is referred to as "H'rg Tr."

memorializing the reasoning and setting the sanction would be forthcoming. (Doc. # 136, at 1.) This is that Order.

## I.   The Order Granting Injunctive Relief

The Order Granting Injunctive Relief, entered on February 23, 2007, provides:

> 1) Defendants are restrained and enjoined from instituting eviction proceedings against the plaintiff, or from directly or indirectly threatening eviction proceedings against the plaintiff, until further order of the court; 2) Defendant Jamarlo K. Gumbaytay is restrained and enjoined from threatening, harassing, or communicating with Plaintiff or any of her immediate family who resides at [] North Gap Loop, Montgomery, Alabama until further order of this court; 3) Defendants are restrained and enjoined from interfering with Plaintiff's possession of the premises located at [] North Gap Loop, Montgomery, Alabama until further order of this court.

(Order (Doc. # 10).) Mr. GumBayTay's agent was served on February 24, 2007, with a copy of the Order Granting Injunctive Relief. (Doc. # 12.)

## II.   Mr. GumBayTay's Willful Violations of the Order Granting Injunctive Relief

A finding of civil contempt requires "clear and convincing" proof of a defendant's contempt. *McGregor v. Chierico,* 206 F.3d 1378, 1383 (11th Cir. 2000). "'This clear and convincing proof must also demonstrate that 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order.'" *Id.* (quoting *Jordan v. Wilson*, 851 F.2d 1290, 1292 n.2 (11th Cir. 1988) (per curiam)).

The court finds that, notwithstanding that Mr. GumBayTay had actual notice of the restraints imposed against him by the Order Granting Injunctive Relief,[2] he committed multiple violations of that order.[3] The court further finds that the evidence is clear and convincing that those violations were willful, intentional and made in bad faith.[4] Specific examples of Mr. GumBayTay's contemptuous conduct follow.[5]

First, the court finds that Mr. GumBayTay interfered with Ms. Boswell's possession of the premises and constructively evicted[6] Ms. Boswell by deliberately failing to make necessary repairs to her home, in violation of the Order Granting Injunctive Relief and as required by the lease agreement. His failure to make repairs also was tantamount to

---

[2] Mr. GumBayTay testified at the March 24, 2009 evidentiary hearing. At first, Mr. GumBayTay denied that he had any knowledge of the Complaint and the Order Granting Injunctive Relief when they were filed. That denial was a fabrication made under oath. Mr. GumBayTay recanted his denial, after being confronted with affirmative contrary evidence, including evidence that a copy of the Complaint was served upon him by certified mail, return receipt requested (Doc. # 11), and that a copy of the Order Granting Injunctive Relief was served upon him by certified mail, return receipt requested (Doc. # 12).

[3] No argument has been made that the Order Granting Injunctive Relief was unlawful, invalid, unclear, indefinite, or ambiguous, or that Mr. GumBayTay was unable to comply with the order. To the contrary, at the evidentiary hearing, Mr. GumBayTay admitted that the order was "lawful," "valid" and "unambiguous," and that he "had the ability to comply" with it. (H'rg Tr. 71.)

[4] At the time of the violations, Mr. GumBayTay was representing himself in this lawsuit, as his counsel, Alfred T. Newell IV, did not enter an appearance on Mr. GumBayTay's behalf until June 3, 2008. Mr. GumBayTay's conduct, however, is not excused by the fact that he proceeded without counsel until June 3, 2008. *See, e.g., Baltimore v. Jim Burke Motors, Automotive*, 300 F. App'x 703, 707 (11th Cir. 2008) (Litigants are not excused by virtue of their *pro se* status from "comply[ing] with the court's orders[.]").

[5] Unless otherwise indicated, the evidence that forms the basis of the court's findings of fact and conclusions of law was received at the March 24, 2009 evidentiary hearing.

[6] Mr. GumBayTay's offending conduct did not cease until July 17, 2007, at the earliest, when the parties appeared before the court on Ms. Boswell's motion seeking enforcement of the preliminary injunction (Doc. # 22). At that hearing, the parties agreed to cancellation of Ms. Boswell's lease, thereby permitting her to move out of the North Gap Loop premises. (Doc. # 31.)

harassment. To elaborate, prior to the entry of the Order Granting Injunctive Relief, Mr. GumBayTay was reasonably diligent in his efforts to make repairs to Ms. Boswell's rental house, but after that order's entry he ignored her repeated and specific requests for repairs and made no repairs to the house during the remainder of her tenancy.

As a result of Mr. GumBayTay's refusal to make repairs, Ms. Boswell's home was in disrepair. There was constant running water from one of the two toilets, spiking Ms. Boswell's water bill for the month of January 2007.[7] Eventually, the toilet water began overflowing, wetting the carpet. The sink in the same bathroom also leaked water and contributed to the soaked carpet. The water leak in the sink was so severe that the cabinet below the sink "caved in." (H'rg Tr. 18.) At some point, a neighbor fixed the toilet from "constantly running," but it could not be used. (H'rg Tr. 39.) Ms. Boswell also had to turn off the water valves to the bathroom sink, making it unusable during her occupancy of the house.

The kitchen sink also was stopped up, and the kitchen sink's faucet spewed water in all directions when turned on. Ms. Boswell purchased "liquid acid" (for approximately $20.00), but that product did not unstop the sink. (H'rg Tr. 34.) Ultimately, Ms. Boswell

---

[7] Exhibit 4, introduced at the evidentiary hearing, comprised the water meter readings during Ms. Boswell's occupancy of the North Gap Loop residence. According to that exhibit, Ms. Boswell was charged $73.58 in December 2006 for water usage, but was charged $164.97 in January 2007 for water usage. Ms. Boswell attributes $91.39 – which represents the difference between the December 2006 and January 2007 charges – to the malfunctioning toilet.

paid her neighbor $50.00 to unstop the kitchen sink, but the sink still was virtually unusable given the faulty faucet.

Either at the end of March or the beginning of April, 2007, Ms. Boswell tried to turn on the air-conditioning system, but it did not work. Despite requests to have the air-conditioning system repaired (H'rg Tr. 26-27 & H'rg Ex. 3), the system was inoperable until Ms. Boswell moved out in mid-July 2007. There were no ceiling fans in the home, and Ms. Boswell had to endure inside temperatures reaching 90 degrees. To cope with the hot temperatures, she taped black plastic bags to all of the windows in an effort to block out the sun's heat, bought a window air-conditioning unit for $50.00 and borrowed another unit from a friend, and purchased three fans (costing approximately $20.00 each). The unbearable heat also forced Ms. Boswell to find alternative living conditions for her four children for approximately six weeks. The children moved in with Ms. Boswell's grandmother whom Ms. Boswell paid $100.00 a week to help with meals and other expenses.

Second, on May 31, 2007, in violation of the express terms of the Order Granting Injunctive Relief enjoining him from evicting Ms. Boswell, Mr. GumBayTay left on Ms. Boswell's doorstep a document, titled "10-Day Notice of Termination of Residential Lease." (H'rg Tr. 41-43 & H'rg Ex. 5.) Mr. GumBayTay admitted that, when he delivered the notice of termination to Ms. Boswell, he was "aware that the court had ordered [him] not to take any action to interfere with her possession of the premises." (H'rg Tr. 67.) Moreover, during this time period, Ms. Boswell saw that her rental unit was "posted" on the Montgomery Housing

5

Authority's "Section 8 list." (H'rg Tr. 43; Boswell Aff. ¶ 26 (Ex. 1 to Doc. # 24).) When one of Ms. Boswell's friends contacted Mr. GumBayTay about the listing, he told her that the current "occupant was probably going to be moving out soon." (Boswell Aff. ¶ 26.)

Third, Mr. GumBayTay further interfered with Ms. Boswell's possession of the North Gap Loop premises and also, at the very least, impliedly threatened eviction, when Ms. Boswell called him pleading that he make the repairs. During that conversation, Mr. GumBayTay told Ms. Boswell she probably should just "move out." (H'rg Tr. 31; *see also* H'rg Tr. 32.)

Fourth, after the entry of the Order Granting Injunctive Relief, Mr. GumBayTay was seen by Ms. Boswell and also by a neighbor driving by Ms. Boswell's house on several occasions, notwithstanding that he managed no other rental properties on her street and that the North Gap Loop house was on a circular, or dead-end, street. These drive-bys made Ms. Boswell feel "nervous" because "[she] didn't know what his next move was going to be." (H'rg Tr. 46.) The court deems these drive-bys as further evidence of Mr. GumBayTay's harassing and threatening conduct.

Having found that the evidence overwhelmingly supports a finding that Mr. GumBayTay willfully, intentionally, and in bad faith violated the Order Granting Injunctive Relief and that Mr. GumBayTay is guilty of civil contempt, the court turns to the monetary amount of the contempt sanction.

### III.  Actual Losses

"Civil contempt sanctions may be imposed for either or both of two distinct purposes, to coerce compliance with a court order, and to compensate the complainant for actual losses sustained by him as the result of the defendants' contumacy." *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400-01 (11th Cir. 1989). "If the fine is compensatory, it is payable to the complainant and must be based on proof of the complainant's actual loss." *Id.* at 401. "If the fine is coercive it is paid into the court registry, not to the complainant." *Id*. "Before imposing either type of sanction, the court should also consider the financial resources of the defendant, and the resulting burden to the defendant." *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987).

Ms. Boswell moved out of the residence on North Gap Loop in July 2007; therefore, there is no longer a need to coerce Mr. GumBayTay's compliance with the Order Granting Injunctive Relief.  Rather, the purpose of civil contempt is compensatory, *i.e.*, to compensate Ms. Boswell for actual losses sustained as a consequence of Mr. GumBayTay's violations of the Order Granting Injunctive Relief.

At the evidentiary hearing, counsel for Ms. Boswell argued that actual losses could include an award for Ms. Boswell's "emotional distress" based upon her (Ms. Boswell's) testimony that, as a result of Mr. GumBayTay's conduct, Ms. Boswell was stressed, lost sleep, and was depressed.  (H'rg Tr. 77.)  Counsel, however, submitted no authority to support that argument, either at the evidentiary hearing or in a later-filed Memorandum of

Law (Doc. # 147). Independent research did not uncover any authority directly on point, but *Chase & Sanborn* is helpful in that it places the burden on the movant to provide "basic evidentiary facts to formulate a realistic sanction to which [a] defendant[] c[an] respond," 872 F.2d at 401; *see also Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2266312, at *16 (S.D.N.Y. Aug. 4, 2006) (Damages for actual loss in civil contempt proceedings "must be established by competent evidence and the amount must not be arrived at by mere speculation or conjecture." (citation and internal quotation marks omitted)). The court does not question Ms. Boswell's testimony about the distress she says Mr. GumBayTay caused her to endure, but, with that said, the court finds that Ms. Boswell has not met her burden of offering basic evidentiary facts from which it can be ascertained that as a result of this distress, she suffered an *actual loss*, as contemplated by *Chase & Sanborn*. *See* 872 F.2d at 400-01.

The court finds, however, that Ms. Boswell has met her burden of providing competent evidence of $866.39 in actual losses directly caused by Mr. GumBayTay's contemptuous behavior. Broken down, the actual losses consist of the following out-of-pocket expenses incurred by Ms. Boswell:

| $ 50.00 | window air-conditioning unit[8] |
|---|---|
| $ 15.00 | "liquid acid" for kitchen sink[9] |

---

[8] (H'rg Tr. 23.)

[9] (H'rg Tr. 35.)

| $ 50.00 | kitchen sink repair[10] |
|---|---|
| $ 60.00 | three fans[11] |
| $600.00 | compensation to Ms. Boswell's grandmother who cared for Ms. Boswell's four children for approximately six weeks[12] |
| $ 91.39 | Additional water usage reasonably attributed to the malfunctioning toilet[13] |

Accordingly, the court will set the civil contempt fine in the amount of $866.39, representing Ms. Boswell's actual losses. Having considered Mr. GumBayTay's statements made under oath as to his financial resources (H'rg Tr. 118-20), the court will permit Mr. GumBayTay to pay the fine in installments.

## IV.   Attorney's Fees

As a component of compensatory civil contempt, a court also may award "expenses reasonably and necessarily incurred in the attempt to enforce compliance," *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976),[14] as well as attorney's fees, *Cook v.*

---

[10] (H'rg Tr. 34.)

[11] (H'rg Tr. 24.)

[12] (H'rg Tr. 26 & 79.)

[13] *Supra* note 7; (*see also* Doc. # 147, at 8 (arguing that as a result of the failure of Mr. GumBayTay to repair the "constantly running toilet and . . . leaking sink," Ms. Boswell's water bill increased from "about $74 in one month to about $165 the following month, a cost to her of approximately $90").)

[14] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit.

*Ochsner Found. Hosp.*, 559 F.2d 270, 273 (5th Cir. 1977) (A court has "inherent authority . . . to award attorneys' fees in a civil contempt proceeding."). *See also Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000) ("[A]ttorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance."); *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1558 (11th Cir. 1996) (One purpose of civil contempt sanctions is to "compensate the complainant for . . . expenses it incurred because of the contemptuous act."). In setting the fee award, a district court also must consider the guidelines contained in *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988) (applying the lodestar method for calculating attorney's fees).[15]

An Order was entered directing counsel for Ms. Boswell to file affidavits, billing records and/or other competent evidence of all attorney's fees and expenses reasonably and necessarily incurred as a result of Mr. GumBayTay's contemptuous conduct associated with his violations of the Order Granting Injunctive Relief. (Doc. # 136.) Evidence of attorney's fees has been filed in the form of affidavits and detailed time statements.[16] (Doc. # 138.)

Having carefully reviewed the legal tasks performed, the rates charged and the time expended in light of the *Norman* guidelines, the court concludes that the hourly rates are

---

[15] In *Norman*, the former Fifth Circuit relied, in part, upon the oft-cited standard articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See Norman*, 836 F.2d at 1298-99; *see also Cook*, 559 F.2d at 273 (instructing district court on remand to address the *Johnson* elements in awarding attorney's fees for civil contempt).

[16] Reimbursement for expenses for telephone, facsimile, copying and electronic research is not being sought. (Allison E. Neal Aff. ¶ 14; Emily J. Martin Aff. ¶ 16; John Pollock Aff. ¶ 16.)

reasonable, that the expended hours are reasonable, as reduced, and that counsel for Ms. Boswell necessarily incurred those fees as a result of Mr. GumBayTay's contemptuous conduct associated with his violations of the Order Granting Injunctive Relief. These reasonable fees were necessarily incurred by Allison E. Neal ($4,094.00),[17] Emily J. Martin ($2,388.00), and John Pollock ($1,178.40), for a total amount of $7,660.40, which will be awarded.

## V. Conclusion

Based on the foregoing, and the court's finding that Mr. GumBayTay is guilty of civil contempt, it is ORDERED that Mr. GumBayTay is liable for civil contempt sanctions in the amount of $866.39 for actual losses and $7,660.40 for attorney's fees (for a total amount of $8,526.79), to be paid jointly to Ms. Boswell and Legal Services Alabama, Inc., at a monthly rate of $50.00 until such time that the sanction is paid in full. Mr. GumBayTay is

---

[17] The time Ms. Neal billed for preparing for and participating in the March 24, 2009 evidentiary hearing has been reduced by half, given that other matters in addition to Mr. GumBayTay's civil contempt were addressed at that hearing. The reduction, however, takes into account that the civil contempt issue consumed substantially more time at the hearing than the other issues and required witness and other preparation that were not required on the other pending matters. The entries reduced by half are identified by date, but described where there are multiple entries on the same date: February 6, 2009; February 13, 2009; February 18, 2009; March 10, 2009; March 17, 2009; March 19, 2009; March 20, 2009 ("[p]repping for evidentiary hearing"); March 20, 2009 ("T/C with Ms. Boswell, prepping for evidentiary hearing"); March 22, 2009; March 23, 2009 ("[p]repping for evidentiary hearing"); March 23, 2009 ("T/C with Ms. Boswell to prep for evidentiary [h]earing"); March 24, 2009 ("[p]repping for evidentiary hearing"); and March 24, 2009 ("[e]videntiary hearing"). The amount claimed for one of the March 20, 2009's entries is denied in its entirety, because the entry indicates that the time was spent on preparing for the "[s]ummary judgment argument." (Doc. # 138-6.) The total amount of the reduction is $2,297.25; thus, Ms. Neal's fee request of $6,391.50 is reduced by $2,297.25 for a total of $4,094.00.

DIRECTED to tender each installment to Legal Services Alabama, Inc., by money order or cash, on or before the fifth day of each month, beginning July 2009.

DONE this 1st day of June, 2009.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE