IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| YOLANDA M. BOSWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-135-WKW[WO] |
| | ) | |
| JAMARLO K. GUMBAYTAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER:**
**Default Judgment Against Defendant Jamarlo K. GumBayTay**

In a prior Order filed August 28, 2008 (Doc. # 103), the court held in abeyance Plaintiff Yolanda M. Boswell's ("Boswell") request for a default judgment as a sanction against Defendant Jamarlo K. GumBayTay ("GumBayTay") for his willful misconduct (Doc. # 61), but indicated that a hearing would be scheduled with respect to the conduct in these proceedings of Mr. GumBayTay *and* his counsel, "with proper notice, in due time"[1] (Doc. # 103, at 1). On March 24, 2009, after proper notice, that hearing was held in conjunction with other pending matters.[2] (March 24, 2009 Evidentiary H'rg Tr. (Doc. # 142) [hereinafter "H'rg Tr."].) At the conclusion of the hearing at which Ms. Boswell testified, the court

---

[1] This lawsuit was filed on February 14, 2007. (Doc. # 1.) Mr. GumBayTay defended himself *pro se* until June 3, 2008, the date Alfred T. Newell IV filed a notice of appearance on Mr. GumBayTay's behalf (Doc. # 56).

[2] The hearing was evidentiary in nature, and ample notice was given. On February 4, 2009, an Order was entered setting the evidentiary hearing on February 24, 2009, addressed to, among other matters, Ms. Boswell's Motion for Sanctions for the Destruction of Documents as pertains to Ms. Boswell's request for default judgment against Mr. GumBayTay. (Doc. # 127; *see also* Doc. # 145 (Order granting motion to continue and continuing evidentiary hearing to March 24, 2009).)

orally entered default judgment on the issue of liability against Mr. GumBayTay as a sanction for his and his counsel's willful and flagrant misconduct.  (H'rg Tr. 115-16.)  In a written order that followed (Doc. # 137), Ms. Boswell was directed to file a brief as to the appropriate damages on the default judgment, together with evidence to support the requested amount.  Ms. Boswell has complied with that order.  This opinion memorializes the court's reasons for entering default judgment against Mr. GumBayTay on the issue of liability and sets the amount of damages.  (Doc. # 137.)  On the issue of damages, the court finds that all evidence required to assess damages is in the record and that a further hearing is not required.

## I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II.  STANDARD OF REVIEW

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides a range of sanctions against a party who fails to obey an order to provide or permit discovery, including a default judgment.  Fed. R. Civ. P. 37(b)(2)(A)(v).  Federal Rule of Civil Procedure 37(d) also authorizes the imposition of sanctions, including default judgment, for a party's failure to respond to a Rule 34 request, *see* Fed. R. Civ. P. 34.  A prior court order is not required for the imposition of Rule 37(d) sanctions, which may include any of the orders set out in Rule 37(b)(2)(A)(i)-(vi). *See Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 130 (S.D.

Fla. 1987) (sanctioning defendant under Rule 37(d) when it destroyed documents in response to plaintiff's initial request for production of documents).   In *Telectron*, observing that "[b]oth more serious-and certainly less remediable-than a party's failure to respond to discovery requests is the willful destruction of discoverable materials," the court explained that "[i]n cases where such destruction has occurred, default judgment has been deemed the only appropriate sanction under Rule 37." *Id.* (collecting cases).   "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process."[3] *Gratton v. Great Am. Commc'n*, 178 F.3d 1373, 1374 (11th Cir. 1999) (holding that district court did not abuse its discretion in dismissing plaintiff's lawsuit based upon its findings that plaintiff, among other things, facilitated the spoliation of evidence and that lesser sanctions would not suffice).

A default judgment, however, is a drastic remedy, reserved for only the most egregious cases, but is warranted when a defendant willfully and in bad faith disregards a court order and the court finds that a lesser sanction would not suffice.   *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (upholding Rule 37(b) sanction of striking defendant's answer and entering default judgment based on defendant's failure to comply with discovery orders).   "[T]he severe sanction of a dismissal or default judgment

---

[3] Moreover, as noted on the Middle District of Alabama's website, "[o]nce a court order is obtained compelling discovery, unexcused failure to provide a timely response is treated by the court with the special gravity it deserves; violation of a court order is always serious and may be treated as contempt, or judgment may be entered, or some other appropriate and measured sanction used."  *See* www.almd.uscourts.gov, Guidelines to Civil Discovery Practice in the Middle Dist. of Alabama.

is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders."[4]  *Malautea*, 987 F.2d at 1542 (citing *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)).

The court also has the "inherent power" to sanction a disobedient party or lawyer.  *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006).  The inherent power to punish disobedience includes the entry of a default judgment.  *Cf. Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (Dismissal of a claim with prejudice is within the court's inherent "authority to enforce its orders and provide for the efficient disposition of litigation.").  That judgment may be based not only upon the willful recalcitrance of a party, but also upon that of his attorney.  *See Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1132 (11th Cir. 1986) (While sanctioning a party for his attorney's misconduct may seem harsh, "a court possesses the inherent authority to enter a default judgment in response to an attorney's dilatory tactics.").  "This power is derived from the court's need 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *In re Sunshine Jr. Stores*, 456 F.3d at 1304 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1121 (11th Cir. 2001)); *see also Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) ("Courts have the inherent authority

---

[4] Here, the offending party is the defendant.  When the offending party is a plaintiff, the sanction equivalent to a default judgment is dismissal of the plaintiff's action, pursuant to Rule 37(b)(2)(A)(v) of the Federal Rules of Civil Procedure.  "The imposition of a default judgment as a Rule 37 sanction is controlled by the same guidelines as the entry of a dismissal order."  *Telectron*, 116 F.R.D. at 129.

to control the proceedings before them, which includes the authority to impose "reasonable and appropriate" sanctions.).

## III. DISCUSSION

During these proceedings, Mr. GumBayTay and his counsel have engaged in repeated, flagrant, egregious and willful litigation abuses and misconduct.  They have acted in callous disregard of the discovery process, court orders and the judicial process, and their conduct has substantially impaired, and brought to a standstill, Ms. Boswell's ability to effectively present her case.  For the reasons to follow, the court finds that the conduct is so egregious as to merit the severe sanction of a default judgment.

## A.    Default Judgment as an Appropriate Sanction

### 1.    Findings of Fact

At the hearing held on March 24, 2009, evidence was received and argument entertained on the matter of the flagrant abuses of the judicial process by Mr. GumBayTay and Mr. Newell.  (*See generally* H'rg Tr.)  Those abuses are outlined below.

#### a.    Spoliation of Evidence

Mr. GumBayTay's flagrant and intentional conduct begins with spoliation of evidence.  The following background is helpful.  On June 6, 2008, Ms. Boswell filed a Motion to Compel the Production of Documents and/or Motion for Sanctions for the Destruction of Documents (Docs. # 61 & 62), requesting the imposition of sanctions, to include a default judgment, against Mr. GumBayTay for his destruction of discovery

documents.[5]  (Docs. # 61 & 62.)  The motion, filed pursuant to Rule 37 of the Federal Rules

of Civil Procedure, provided that on April 9, 2008, Ms. Boswell served a request for

production of documents on Mr. GumBayTay, pursuant to Rule 34 of the Federal Rules of

Civil Procedure, but that on April 15, 2008, Mr. GumBayTay notified Ms. Boswell in writing

that he had destroyed all of the requested documents, pursuant to what he claimed was a

directive from the Alabama Real Estate Commission issued on March 31, 2008.  (Doc. # 62.)

He later, however, orally conceded in a conversation with Ms. Boswell's counsel that "some

documents might still be on his laptop or with his assistant," and subsequently, after Mr.

Newell's retention, "[Mr.] Newell referred to 'two boxes of material [Mr.] Gumbaytay gave

him to review.'"  (Doc. # 94, at 3 (Recommendation) (citations omitted).)

On June 6, 2008, the Magistrate Judge entered an Order directing Mr. GumBayTay

to show cause why Ms. Boswell's motion requesting sanctions and requesting that Mr.

GumBayTay be compelled to produce the requested discovery documents (Doc. # 62) should

not be granted.  When Mr. GumBayTay failed to respond, the Magistrate Judge granted the

motion to compel, imposed a June 23, 2008 deadline for production of the requested

discovery, and directed that the motion for sanctions would be addressed at a hearing on June

18, 2008.  (Doc. # 67.)

At the June 18 hearing, Mr. GumBayTay "admitted that he destroyed the *majority* of

his documents" that were subject to Ms. Boswell's Rule 34 request (Doc. # 94, at 4

---

[5] The motion was referred to Judge Moorer, the Magistrate Judge assigned to this case, who held
a hearing on the matter on June 18, 2008.

(emphasis added).)  As explained in the Magistrate Judge's Recommendation (Doc. # 94), which the court has adopted (Doc. # 103), the destruction of documents was wholly without foundation and was done willfully and in bad faith:

> Gumbaytay displays bad faith and willfulness when it comes to his flagrant discovery violations.  Gumbaytay admits he destroyed documents and evidence shows it was done after receiving the Requests for Production.  Further, the Court does not find credible, despite his *pro se* status at the time, that Gumbaytay felt he was required to do so by the Alabama Real Estate Commission.  Nothing in the Cease and Desist order suggests Gumbaytay should destroy the documents and the Alabama Real Estate Commission further states "at no time was [Gumbaytay] orally or otherwise instructed to destroy any records."  *See* Doc. 78, Exhibit 3 at p. 4-5; Doc. 78, Exhibit 4.  Further, none of the relevant Alabama statutes cited by Gumbaytay compel[s] destruction of the documents.  The Court determines the spoliation of evidence by Gumbaytay was done in bad faith.  The lawsuit had been pending for more than a year when Gumbaytay destroyed the documents just after receiving a request for them from the Plaintiff.

(Doc. # 94, at 8-9.)

At the March 24, 2009 hearing, the court reiterated its agreement with Judge Moorer's findings set out in his Recommendation (Doc. # 94).  Specifically, as to Mr. GumBayTay, the court emphasized that, after receiving a discovery request from Ms. Boswell, Mr. GumBayTay destroyed the majority of the documents that were subject to that request, that his destruction of documents was willful, intentional and done in bad faith, and that Ms. Boswell suffered "incurable prejudice because of the destruction of important evidence in the case." (H'rg Tr. 113-14.)  Indeed, it was established at that hearing that Mr. GumBayTay never turned over to Ms. Boswell any of the materials contained in the undestroyed boxes. (H'rg Tr. 8.)  The court also found that Mr. GumBayTay's "behavior was contemptuous of

the orders of the Court and the process of this Court and obstructed the orderly prosecution of this case." (H'rg Tr. 113.)

In his Recommendation, Judge Moorer also concluded that "default judgment <u>and</u> dismissal of Gumbaytay's counterclaims may be proper remedies in light of Gumbaytay and Newell's behavior which has obstructed the orderly prosecution of the case."[6] (Doc. # 94, at 9.) However, because Judge Moorer's task at hand was focused "solely on the destruction of documents and the related behavior," rather than on the totality of Mr. GumBayTay's egregious conduct, which was multiplied when Mr. Newell joined the case, Judge Moorer confined his sanction recommendation to one slightly less harsh than the requested default judgment, *i.e.*, dismissal of Mr. GumBayTay's counterclaims. (Doc. # 94, at 9.)

Judge Moorer also made the point, with which the court agrees, that default judgment against Mr. GumBayTay and dismissal of Mr. GumBayTay's counterclaims are two separate and distinct issues, and that default judgment is an option "for the further disruptions caused by Newell and Gumbaytay." (Doc. # 94, at 9 n.6.) Judge Moorer explained that "[f]urther evaluation of the case may be necessary to determine whether the totality of the circumstances justifies a default judgment in this case." (Doc. # 94, at 9 n.6.) Further

---

[6] Mr. GumBayTay's conduct is not excused by the fact that he proceeded without counsel until June 3, 2008. *See Baltimore v. Jim Burke Motors, Automotive*, 300 F. App'x 703, 707 (11th Cir. 2008) (Litigants are not excused by virtue of their *pro se* status from "comply[ing] with the court's orders and with the discovery rules."); *Reed v. Fulton County Gov't*, 170 F. App'x 674, 676 (11th Cir. 2006) ("[P]ro se litigants are obligated to obey discovery orders.").

evaluation of the totality of Mr. GumBayTay's and Mr. Newell's conduct has been conducted, as delineated below.

>   **b.    Willful Violations of Preliminary Injunction**

At the hearing held on March 24, 2009, the court emphasized that Mr. GumBayTay's willful destruction of documents exhibited "*cumulative* contemptuous conduct by Mr. GumBayTay with respect to the proceedings of this court in consideration of his clear violation of the preliminary injunction." (H'rg Tr. 114 (emphasis added).)  As found at the March 24, 2009 hearing, Mr. GumBayTay's deliberate disregard for the court's orders and the judicial process includes flagrant violations of the court's preliminary injunction (Doc. # 10).  In a separate Order, filed contemporaneously, Mr. GumBayTay's repeated, egregious and willful violations of that preliminary injunction are detailed; those findings need not be repeated here, but are incorporated into this opinion as further support for the sanction of a default judgment.[7]

>   **c.    False Statement and Violation of the Court's Order to Meet and Confer**

It also has not gone unnoticed, but is noteworthy, that Mr. GumBayTay's concession at the June 18, 2008 hearing before Judge Moorer that he (Mr. GumBayTay) destroyed the *majority* of the documents requested by Ms. Boswell rendered false his earlier out-of-court statement made to Ms. Boswell's counsel that he had destroyed *all* of the documents relevant to the Rule 34 request.  (Doc. # 94, at 4.)  Mr. GumBayTay's concession, made in open court,

---

[7] The misconduct has been considered based upon its totality.

led to yet additional misconduct.  Because the evidence at the June 18, 2008 hearing revealed that Mr. GumBayTay and his counsel had not reviewed Ms. Boswell's request for production of documents to determine whether any of the existing documents were responsive to Ms. Boswell's Rule 34 discovery request, the Magistrate Judge ordered Mr. Newell and Mr. GumBayTay to have a conference by June 23, 2008, to determine whether there were any outstanding documents subject to those requests.  (Doc. # 94, at 4.)  In violation of the Magistrate Judge's order, Mr. GumBayTay and Mr. Newell did not have that meeting prior to the June 23, 2008 deadline.  (Doc. # 94, at 10.)  The court finds that Mr. GumBayTay's and Mr. Newell's disregard for that Order was willful, intentional and in bad faith.

### d.    Mr. Newell's Significant Contribution to the Abusive Conduct

Mr. GumBayTay's flagrant abuses of the discovery and judicial processes and the court's orders were compounded when his attorney joined the case on June 3, 2008.  For one, on June 3, 2008, several hours *after* Mr. GumBayTay's deposition was scheduled to begin, Mr. GumBayTay filed a motion to continue the deposition, making it impossible for the Magistrate Judge to enter a timely ruling and causing Ms. Boswell to incur attorney's fees and expenses for a court reporter.  The Magistrate Judge accurately characterized that motion to continue as an unacceptable "dilatory tactic[.]"  (Doc. # 59, at 2; *see also* Doc. # 94, at 4 n.3.)  For another thing, Mr. Newell was an hour and fifteen minutes late to the June 18, 2008 hearing before the Magistrate Judge, and his excuse for being late was wholly unbelievable and his tardiness was completely avoidable.  (Doc. # 94, at 5 n.5.)  And even on March 24,

10

2009, at the hearing when Mr. Newell's misconduct was directly at issue, Mr. Newell and his client were late returning to court after a recess.  (H'rg Tr. 81 & 84.)

Unfortunately for Mr. GumBayTay, the foregoing examples represent the least of Mr. Newell's flagrant disrespect for and obstruction of the judicial process.  In a separate Order entered today, explaining the reasons for disqualifying Mr. Newell as Mr. GumBayTay's counsel in this case and for imposing additional sanctions against him, the details of Mr. Newell's flagrant abuses are outlined.  To summarize, Mr. Newell has vituperously referred to Ms. Boswell as a "crack whore" in multiple pleadings; he has lodged unfounded accusations against Ms. Boswell and her counsel accusing them of committing various crimes; he has expressly threatened to have Ms. Boswell's counsel prosecuted; and he has attempted to extort from Ms. Boswell's counsel the return of a $500 court-ordered fine he paid to her.  Mr. Newell consequently has been found in violation of the rules of this court and five Alabama Rules of Professional Conduct.  This conduct, and all of the other conduct outlined in the accompanying orders, is part and parcel of the conduct that justifies imposition of a default judgment as a sanction against Mr. GumBayTay.  *See Solaroll Shade & Shutter Corp.*, 803 F.2d at 1132 (While sanctioning a party for his attorney's misconduct may seem harsh, "a court possesses the inherent authority to enter a default judgment in response to an attorney's dilatory tactics.").  As aptly noted by the Magistrate Judge, "[T]he behavior by defense counsel Alfred Newell IV has been appalling" and "atrocious."  (Doc. # 94, at 1 n.1.)

11

### e.      Improper Signature

Another example of the misconduct erupting after Mr. GumBayTay and Mr. Newell joined forces occurred on August 14, 2008, when Mr. GumBayTay hand-delivered a motion for filing in this case.  (Doc. # 96.)  In the presence of an employee of the Clerk of the Court, Mr. GumBayTay signed Mr. Newell's name to the motion.  (Doc. # 96; *see also* Doc. # 106, at 1 n.1.)  Mr. GumBayTay's act of signing his attorney's name to the motion was wholly improper, even assuming *arguendo* that "permission" was given by Mr. Newell (H'rg Tr. 94).  Additionally, while the court calls into question the veracity of Mr. Newell's statement at the March 24, 2009 hearing that he gave Mr. GumBayTay "permission" to sign his name on that motion (H'rg Tr. 94), such permission would not relieve Mr. Newell of his obligations under Rule 11 of the Federal Rules of Civil Procedure.[8]  *See* Fed. R. Civ. P. 11(a) (requiring an attorney to sign every pleading, written motion or other paper submitted on behalf of his client).  Further, after it was called to his attention, Mr. Newell had the opportunity to "promptly correct" the violation, Fed. R. Civ. P. 11(a), but did not. Permission from the court never was sought to resubmit the motion with a corrected signature.

### 2.     *Conclusions of Law*

Based upon the totality of the record, the sanction of a default judgment is, in the words of *Malautea*, "richly deserved."  987 F.2d at 1542.  Suffice it to say that Mr.

---

[8] The court also finds that the explanation is unsatisfactory.

GumBayTay and his counsel, Mr. Newell, have made a formidable tag team of contempt for the orders of this court, for the rules of law, procedure and discovery, and for the local rules of this court, not to mention societal norms of common decency and civility. (H'rg Tr. 116.) Mr. Newell's violations of the Alabama Rules of Professional Conduct are numerous, as set out in an accompanying order, and it is almost a given that there have been numerous violations of the Alabama Litigation Accountability Act and Rule 11 of the Federal Rules of Civil Procedure. (H'rg Tr. 116.) For all the reasons pronounced at the March 24, 2009 hearing, which are detailed in the record of that proceeding, and based upon the entire record in this case, default judgment is an appropriate sanction. (H'rg Tr. 116.)

The court recognizes today, as it did at the March 24, 2009 hearing, that default judgment is a harsh sanction to be used only in the most egregious cases for the flagrant disregard and willful disobedience of the orders of the court, the rules of law, and the discovery process. The conduct manifested in this case by Mr. GumBayTay and Mr. Newell represents precisely the kind of conduct for which the default judgment sanction exists.

Ms. Boswell has suffered extreme prejudice in this case as a result of Mr. Newell's and Mr. GumBayTay's massive flagrant misconduct. As a result of the flagrant abuses, Ms. Boswell has had to expend numerous hours pursuing remedies from the court to bring Mr. Newell and Mr. GumBayTay into compliance with court orders and the rules of law and procedure that govern federal court proceedings. Those efforts have included, but have not

been limited to, those recited in the margin.[9]  Multiple hearings also have been held.[10]  The continual interruptions caused by the flagrant abuses have severely hampered Ms. Boswell's ability to concentrate on the merits of this case and have wasted vast judicial resources.  Ms. Boswell also has suffered "incurable prejudice because of the destruction of important evidence in the case."  (H'rg Tr. 113-14.)  The majority of the documents were purposely destroyed by Mr. GumBayTay, and, as to the remaining undestroyed documents, it was established at the March 24, 2009 hearing that Mr. GumBayTay never turned over any of these materials to Ms. Boswell.  (H'rg Tr. 8.)  In short, Ms Boswell has received no meaningful tangible discovery from Mr. GumBayTay.  The obstruction of discovery in this case was blatant and willful, beginning with Mr. GumBayTay's destruction of documents and continuing with Mr. Newell's perpetuation of the obstruction.

The panoply of lesser sanctions has been considered.  The court, however, expressly finds that no lesser sanction than default judgment would suffice to deter Mr. GumBayTay and Mr. Newell from their repeated and numerous abuses of the judicial system.  *See Malautea*, 987 F.2d at 1542.

---

[9] (*See, e.g.*, Doc. # 22 (Pl. Mot. for Sanctions), Doc. # 23 (Pl. Mot. to Strike Answer); Doc. # 46 (Pl Mot. for H'rg on Mot. for Sanctions); Doc. # 47 (Pl. Mot. to Dismiss Countercl.); Doc. # 48 (Pl. Mot. to Strike Answer as Unresponsive and for Entry of Default J. as a Sanction); Doc. # 61 (Pl. Mot. for Sanctions for Destruction of Docs.); Doc. # 62 (Pl. Br. in Support of Mot. for Sanctions); Doc. # 138 (Pl. Mot. for Atty Fees); Doc. # 147 (Pl. Br. in Support of Damages); Doc. # 148 (Pl. Proposed Findings).

[10] (*See, e.g.*, Doc. # 31 (July 17, 2007 H'rg on Pl. Mot. for Sanctions & Enforcement of Prelim. Inj.); Doc. # 71 (June 18, 2008 H'rg on Mot. for Sanctions for Destruction of Docs. & Atty. Fees for Failure of GumBayTay to Appear for Dep.); Doc. # 133 (March 24, 2009 Evidentiary H'rg).  Lest it need be said, Mr. Newell and Mr. GumBayTay, by their egregious misconduct, have created a huge drain on the judicial system and its resources.

**B.    Default Judgment: Liability**

On February 14, 2007, Ms. Boswell filed this lawsuit against Mr. GumBayTay and another, alleging housing discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619.  The lawsuit arises out of Ms. Boswell's rental tenancy at a residence on North Gap Loop in Montgomery, Alabama, and allegations that Mr. GumBayTay, who managed the property, demanded sexual favors from Ms. Boswell as a condition for not raising the rent and that, when she refused his demands, he demanded an additional $100 in rent, tried to evict her and refused to make necessary repairs.[11]

----

[11] Here is a sampling of Mr. GumBayTay's undisputed sexual propositions.  As a condition for not raising the rent $100, Mr. GumBayTay expressed to Ms. Boswell that he expected her to "come and see [him]" and "come and spend a little time with [him]."  (Doc. # 97-2, at 4; media file "Call 6.")  If, however, she did not need his "favors," she would need to bring him $550 for the monthly rent.  (Doc. # 97-2, at 7- 8; media file "Call 6.")  He advised that "[s]ometimes a woman has to do what a woman has to do in order to feed her family and live a comfortable lifestyle for her and her family."  (Doc. # 97-2, at 8-9; media file "Call 6.")  He proposed that "[o]ne weekend a month [they] c[ould] go out of town and do some things. . . . [She did not have to stay in town and] just get up under [him] all the time" (Doc. # 97-2, at 9, 11; media file "Call 6.")  At another time, he said, "And you're gonna start trying to work on your next month rent this month. . . . You gonna work on that sugar daddy account this week or next week be good for you?"  (Doc. # 93-18, at 3; media file "Call 2."), and he said, "[R]ent won't be $550; it'll be $450.  I'll take care of $550. . . . I'll take care of $100 of that . . . if I could see you every once in a while."  (Doc. # 97-3, Tr. of Recorded Conversation Between Boswell and GumBayTay on Oct. 17, 2006 2-3; Audio Recordings of Conversations Between Boswell and GumBayTay, media file "Call 3.")  When Ms. Boswell asked Mr. GumBayTay whether he was saying that she had to have sex with him or else pay $550 in rent, Mr. GumBayTay stated that he did not want to "put it that blunt," because it "sound[ed] like harassment."  (Doc. # 97-3, at 8; media file "Call 3.")  However, he stated that Ms. Boswell should "let [her] conscience be [her] guide."  (Doc. # 97-3, at 8; media file "Call 3.")

This and other evidence is discussed at length in Ms. Boswell's memorandum of law (Doc. # 93) accompanying her Motion for Summary Judgment (Doc. # 92).  The totality of the summary judgment evidence has been considered carefully.  The evidence, construed in the light most favorable to Mr. GumBayTay, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), establishes without dispute each of Ms. Boswell's FHA claims against Mr. GumBayTay on the issue of liability (Compl. (Doc. # 1)).  If default judgment against Mr. GumBayTay had not been fully justified and necessary as a sanction against Mr. GumBayTay, Ms. Boswell's summary judgment motion would have been granted in her favor and against Mr. GumBayTay on the issue of liability as to the claims in the complaint.  Stated differently, the summary judgment motion provides an alternative basis for entering judgment in Ms. Boswell's favor on the issue of liability as to her claims against Mr. GumBayTay.

The Complaint's allegations are well pleaded, and those allegations are supported by the evidence and independently demonstrate Mr. GumBayTay's liability against Mr. GumBayTay.  In other words, the "well pleaded" allegations in the Complaint demonstrate a "sufficient basis" to support a finding that Mr. GumBayTay is liable to Ms. Boswell on the claims alleged in the complaint.  *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  The court, therefore, treats the allegations as to liability in the Complaint as true and admitted by Mr. GumBayTay.

## C.   <u>Default Judgment: Damages</u>

The court has determined that Ms. Boswell is entitled to a default judgment against Mr. GumBayTay on the issue of liability.

Ms. Boswell seeks actual and punitive damages, pursuant to 42 U.S.C. § 3613(c)(1). (Doc. # 147; Doc. # 1.)  She requests $50,000 for actual damages based upon the emotional distress she says she suffered because of Mr. GumBayTay's unlawful sexual harassment and retaliation.  She also seeks punitive damages in the amount of $75,000 from Mr. GumBayTay on the basis that his conduct was "motivated by evil motive or intent" and/or shows a "reckless or callous disregard of or indifference" to Ms. Boswell's rights.  (Doc. # 147, at 3.)

Actual damages under § 3613(c)(1) include compensation for "anger, embarrassment, and emotional distress[.]"  *Banai v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 102 F.3d 1203, 1207 & n.4 (11th Cir. 1997) (holding that "anger, embarrassment, and emotional distress are clearly compensable injuries under th[e] [FHA]," which permits recovery of "actual

16

damages" including "compensation for the victim's injuries"). And damages for emotional distress "'may be inferred from the circumstances as well as proved by the testimony.'" *HUD v. Blackwell*, 908 F.2d 864, 872-873 (11th Cir. 1990) (quoting *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983)). "That the amount of damages is incapable of exact measurement does not bar recovery for the harm suffered." *Marable*, 704 F.2d at 1220-21. A plaintiff's own testimony can suffice as evidence to support an award of pain and suffering damages in FHA cases. *See id.*

In addition, punitive damages are available when a defendant's conduct is "motivated by evil motive or intent" or shows a "reckless or callous disregard of, or indifference" to a plaintiff's rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983) (delineating standard under 42 U.S.C. § 1983); *see also Badami v. Flood*, 214 F.3d 994, 997 (8th Cir. 2000) (applying the *Smith* standard in an FHA case); *Alexander v. Riga*, 208 F.3d 419, 430-32 (3d Cir. 2000) (same). Federal law governs the determination of punitive damages under the FHA. *Badami*, 214 F.3d at 997. As recognized in *Badami*, the Supreme Court has defined "malice" and "reckless indifference" in the Title VII context as pertaining to a defendant's "'knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). The purpose of such an award is "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Smith*, 461 U.S. at 54 (citation and internal quotation marks omitted).

17

Also, in this case, damages are being determined under the rules governing default judgments.  Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, after the entry of a default judgment, a district court "may conduct" an evidentiary hearing "to determine the amount of damages[.]" Fed. R. Civ. P. 55(b)(2).  By its plain wording, Rule 55(b)(2) permits, but does not require, an evidentiary hearing.  The court's core duty is "to assure [itself] that there is a legitimate basis for any damage award it enters[.] *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (brackets added); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'")[12] (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).  That legitimate basis may or may not, depending upon the circumstances, necessitate a hearing. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").  When, for example, the default judgment does not arise early in the proceedings, but rather after protracted litigation where substantial evidence of the defendant's wrongdoings has been received, the court's familiarity with the case may supplant the need for a hearing.  *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (holding that district court did not abuse its discretion in declining to hold an

---

[12] *Adolph Coors* arose in the context of the entry of a default judgment as a Rule 37 sanction. *See* 777 F.2d at 1543.

evidentiary hearing prior to awarding punitive damages; "plentiful evidence on the [defendant's] conduct has been received. The district judge, himself, has maintained a long and close familiarity with the issues in this matter."); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (The district court "was inundated with affidavits, evidence, and oral presentations by opposing counsel. In view of the long and tortuous history of these proceedings, [it] had 'sufficient basis from which to evaluate the fairness of the . . . sum' awarded on default judgment.").

Here, the court is satisfied that the record contains adequate and legitimate proof of damages. After proper notice to Mr. GumBayTay (Doc. # 127 ¶ 3), a hearing was held on March 24, 2009, on various pending matters, including the issue of whether a default judgment against Mr. GumBayTay was appropriate as a sanction, and Mr. GumBayTay and his counsel were present at that hearing. Ms. Boswell testified at the hearing, and her demeanor was observed. While her testimony focused principally on the damages and emotional distress she suffered as a result of Mr. GumBayTay's violations of the preliminary injunction, those damages are inextricably intertwined with her damages on the underlying FHA sexual harassment and retaliation claims. (*Compare* H'rg Tr. 10-56, with Pl. Decl. (Ex. 1 to Doc. # 24).) The court also has had the opportunity to observe Ms. Boswell's demeanor and hear her statements relating to damages in other proceedings as well. (*See, e.g.*, Doc. # 31 (H'rg on Pl. Mot. for Sanctions & Expedited Modifications/Enforcement of Prelim. Inj.).)

In addition, Ms. Boswell has submitted a declaration in this case. (Pl. Decl. (Ex. 1 to Doc. # 24).) In that declaration, dated July 6, 2007, she says that Mr. GumBayTay's sexual "harassment has caused [her] great pain and suffering" and that she has "continue[d] to experience pain and suffering to the present day." (Pl. Decl. ¶ 4.) She also says that his propositions "shocked," "horrified," and "humiliated" her, (Pl. Decl. ¶ 10), and that she became "completely stressed out and started missing days of work due to being stressed about this situation" (Pl. Decl. ¶ 13). Furthermore, as set out in the declaration, Ms. Boswell would "cry[] often whenever [she] talked to people about what was going on." (Pl. Decl. ¶ 13.) She was "constantly afraid that [her] family would not have a place to live if [she] did not meet his demands." (Pl. Decl. ¶ 14.) As a result of Mr. GumBayTay's sexual harassment, she also says that she "ha[s] not been able to eat regularly, and feel[s] extremely frustrated and tired." (Pl. Decl. ¶ 32.)

Finally, the court has extensive familiarity with Mr. GumBayTay's conduct as a result of the multiple substantive proceedings conducted during the twenty-seven-month pendency of this case. Neither another hearing nor receipt of additional evidence is necessary.

Applying the foregoing standards, having received Ms. Boswell's testimony and declaration, having observed her demeanor, and being intimately knowledgeable of the substantive allegations and evidence, the court finds that Mr. GumBayTay's sexual harassment and retaliatory acts caused Ms. Boswell to suffer anger, humiliation and emotional distress, and that Ms. Boswell's actual damages extended at least through the

evidentiary hearing held on March 24, 2009.  As a result, the court finds that Ms. Boswell is entitled to $25,000 in actual damages and that this amount has been proven by the evidence, is justified and will fairly compensate Ms. Boswell for her claims of damages.

The court further finds that Mr. GumBayTay's conduct was intentional and motivated by evil motive or intent and exhibited a reckless and callous disregard of and indifference to Ms. Boswell's rights.  Ms. Boswell's entitlement to punitive damages has been proven, and an award of $25,000 in punitive damages is justified.

## IV.  CONCLUSION

This court has determined, after careful review of the evidence, the totality of the circumstances, and the entire court file, that the only way to cure the harm Ms. Boswell has suffered in this case is to enter a default judgment against Mr. GumBayTay as a sanction for his and his attorney's willful and egregious misconduct.  This determination has taken into account the court's inherent powers, the substantial prejudice suffered by Ms. Boswell, the culpability of Mr. Newell and Mr. GumBayTay, and the consideration, but rejection, of lesser sanctions.

Accordingly, it is ORDERED that default judgment is due to be ENTERED against Defendant Jamarlo K. GumBayTay as a sanction for his and his attorney's (Alfred T. Newell IV) willful and bad faith misconduct, and that Plaintiff Yolanda M. Boswell HAVE and RECOVER from Mr. GumBayTay $25,000 in actual damages, jointly and severally with

Defendant Matthew W. Bahr, and $25,000 in punitive damages.  A final judgment shall be entered separately.

The Clerk of the Court is DIRECTED to serve a copy of this Memorandum Opinion and Order on Mr. Newell.

DONE this 1st day of June, 2009.

/s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

22