IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| YOLANDA M. BOSWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:07-CV-135-WKW[WO] |
| | ) |
| JAMARLO K. GUMBAYTAY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER:**
**Disqualification of Alfred T. Newell IV**

Before the court is Plaintiff Yolanda M. Boswell's ("Boswell") Motion for Attorney Disqualification and Other Sanctions (Doc. # 87) to which Alfred T. Newell IV ("Newell") filed a response (Doc. # 91). On March 24, 2009, after proper notice, a hearing was held on the motion in conjunction with other pending matters.[1]  (March 24, 2009 Evidentiary H'rg Tr. (Doc. # 142) [hereinafter "H'rg Tr."].)  At the hearing, the court orally granted the motion, disqualified Mr. Newell from further representation in the case, and forewarned that additional sanctions would be forthcoming.  (H'rg Tr. 96-97, 104; *see also* Doc. # 137 ¶ 1.) In an order entered on March 30, 2009 (Doc. # 137), the court directed the Clerk of the Court to reflect Mr. Newell as "terminated" in the court's record as to this case, and further

---

[1] The hearing was evidentiary in nature, and ample notice was given. On February 4, 2009, an Order was entered setting the evidentiary hearing on February 24, 2009, addressed to, among other matters, Ms. Boswell's Motion for Attorney Disqualification and Other Sanctions.  (Doc. # 127; *see also* Doc. # 145 (Order granting motion to continue and continuing evidentiary hearing to March 24, 2009).)

indicated that a written Order memorializing the reasons for disqualifying Mr. Newell and imposing additional sanctions would be forthcoming. (Doc. # 137 ¶ 3.) This is that Order.

## I.  STANDARD OF REVIEW

"Courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980)). This power "'necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.'" *Id.* (quoting *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 (5th Cir. 1968)). "Such sanctions include . . . disqualification of counsel[.]" *Id.* "A trial judge possesses the inherent power to discipline counsel for misconduct, short of behavior giving rise to disbarment or criminal censure, without resort to the powers of civil or criminal contempt." *Id.*

"The standards governing disqualification of an attorney already admitted to appear before the district court differ, depending on the circumstances." *Schlumberger Techs. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). *Schlumberger Technologies* espoused two standards. First, "[i]f the conduct at issue threatens disruption of the court proceedings, or is a deliberate challenge to the authority of the district court, . . . great deference [is given] to the trial court's decision to disqualify the responsible attorney." *Id.* (citing as examples *United States v. Dinitz*, 538 F.2d 1214, 1220-21 (5th Cir. 1976), and *Kleiner*, 751 F.2d at 1207). A later Eleventh Circuit case described this standard as applying to "conduct

disruptive of the proceedings or constituting a threat to the orderly administration of laws," or, more succinctly, said the standard applied to "the 'orderly administration of justice' line of cases." *In re BellSouth Corp.*, 334 F.3d 941, 959 (11th Cir. 2003) (citation omitted). Second, "[i]f . . . the conduct at issue does not threaten the orderly administration of justice but is allegedly unethical, . . . district courts [must] rest their disqualification decision on the violation of specific Rules of Professional Conduct, not on some 'transcendental code of conduct . . . that . . . exist[s] only in the subjective opinion of the court.'" *Schlumberger Techs.*, 113 F.3d at 1561.

In addition, the Eleventh Circuit in *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306 (11th Cir. 2002), held that "before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'" *Id.* at 1320 (quoting *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918 (11th Cir. 1982)); *but see Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005) (recognizing, but not resolving, the lack of clarity in Eleventh Circuit cases as to whether those cases require "subjective bad faith, which may be inferred from reckless conduct, or [whether] they merely require reckless conduct, which is considered "tantamount to bad faith" (brackets added)). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues [even] a meritorious claim for the purpose of harassing an opponent." *Thomas*, 293 F.3d at 1320. As the Eleventh Circuit has held, "[A]n attorney who submits documents to the district court that contain *ad hominem* attacks

3

directed at opposing counsel is subject to sanction under the court's inherent power to oversee attorneys practicing before it." *Id.* at 1308; *see also id.* at 1326 n.29. Submissions to the court "are not meant to be an avenue through which attorneys, clients, and witnesses can simply emote, let off steam, or otherwise sling mud at an adversary." *Id.* at 1325. Bad faith also is demonstrated by conduct that "hampers enforcement of a court order." *Id.* In such an instance, "disqualification [is] justified by the 'strong . . . interest in securing obedience to mandates of the court which is necessary to secure the orderly administration of the laws." *Schlumberger Techs.*, 113 F.3d at 1560 n.7 (quoting *Kleiner*, 751 F.2d at 1210).

## II. BACKGROUND

This lawsuit was filed on February 14, 2007. (Doc. # 1.) Mr. Newell made his debut in the litigation on June 3, 2008, when he filed a notice of appearance on behalf of Mr. GumBayTay. (Doc. # 56.) The litigation, which up to this point was already riddled with egregious misconduct by Mr. GumBayTay, took a further dramatic turn for the worse when Mr. Newell joined forces with Mr. GumBayTay.[2] The drama began immediately.

Contemporaneously with filing his notice of appearance, Mr. Newell filed a motion to continue Mr. GumBayTay's deposition. That deposition had been scheduled to begin at 9:00 a.m. on June 3, 2008 (Doc. # 58-2), but Mr. Newell's motion to continue was not filed until late that afternoon (Doc. # 57). In an Order entered on June 5, 2008, the Magistrate

---

[2] As will be seen from the balance of this opinion and the findings of two other orders entered contemporaneously, the marriage was not made in heaven, but considerably south of that sweet clime.

Judge lamented that, given the belated filing of Mr. Newell's motion to continue the deposition, a "timely ruling on the merits of the motion" was not possible. (Doc. # 59, at 1.) He continued, "While the Court understands that counsel was newly retained, Defendant Gumbaytay has been aware for several weeks of his upcoming deposition. Such dilatory tactics cannot be tolerated especially since the dispositive motion deadline is quickly approaching." (Doc. # 59, at 1 (internal citation omitted).) In the same Order, the Magistrate Judge set a hearing on June 18, 2008, at 10:00 a.m., for the purpose of determining Ms. Boswell's reasonable expenses incurred in connection with the late-filed motion to continue.[3] (Doc. # 59, at 2.)

Mr. Newell also perpetuated Mr. GumBayTay's prior destruction of documents and hindered the efficient resolution of the issues surrounding that destruction. On June 6, 2008, Ms. Boswell filed a Motion to Compel the Production of Documents and/or Motion for Sanctions for the Destruction of Documents and a brief, requesting the imposition of sanctions against Mr. GumBayTay for his destruction of discovery documents. (Docs. # 61 & 62.) The same day, the Magistrate Judge entered an Order (Doc. # 63) directing Mr. GumBayTay to show cause why Ms. Boswell's motion requesting sanctions and requesting that Mr. GumBayTay be compelled to produce the requested discovery documents (Doc. # 62) should not be granted. Mr. Newell did not respond to the motion on behalf of his client; hence, the Magistrate Judge granted the motion to compel, imposed a June 23, 2008

---

[3] In accordance with 28 U.S.C. § 636 and the local rules of this district, this case was referred to United States Magistrate Judge Terry F. Moorer for appropriate disposition of pretrial discovery motions.

deadline for production of the requested discovery, and directed that the motion for sanctions would be addressed at the scheduled hearing on June 18, 2008 (Doc. # 67).

In the interim between the Magistrate Judge's Order and the June 18, 2008 hearing, Mr. GumBayTay was deposed. His counsel was present, but not with a demeanor becoming of an attorney. The disruptive conduct by Mr. Newell was frequent; it was unprofessional. He repeatedly interrupted the direct examination of Ms. Boswell's counsel (Allison Neal), and he improperly interjected comments in attempts to testify on behalf of his client and non-present third parties. (*See, e.g.*, GumBayTay Dep. 166, 220, 224, 229, 246-47, 250 (Ex. B to Doc. # 92).) At one point, Mr. Newell interrupted Ms. Neal's questioning in such a disruptive manner that his own client, Mr. GumBayTay, said, "Don't get me thrown out of here," to which Mr. Newell responded, "I don't care. I'll get thrown out." (GumBayTay Dep. 251); (*see also* H'rg Tr. 97.) Mr. GumBayTay then pleaded, "Listen to me. Seriously[.]" (GumBayTay Dep. 251.)

Not only did Mr. Newell disrupt the discovery process, he flouted the orders of the court. He disregarded the Magistrate Judge's Order setting the time for the June 18, 2008 hearing at 10:00 a.m. Mr. Newell arrived an hour and fifteen minutes late to that hearing. He tried to blame traffic problems on his untimely arrival. However, based upon the information garnered at the hearing, in particular a phone call received by the court from Mr. Newell's assistant indicating that Mr. Newell left Birmingham at 9:00 a.m. for his ninety-

6

mile trip to Montgomery, the Magistrate Judge "d[id] not find credible Mr. Newell's assertions that traffic was the only reason for the delay." (Doc. # 94, at 5 n.5.)

At the same hearing, the evidence revealed that Mr. GumBayTay and his counsel had not reviewed Ms. Boswell's request for production of documents to determine whether any of the existing undestroyed documents were responsive to that request. The Magistrate Judge, thus, ordered Mr. Newell and Mr. GumBayTay to have a conference by June 23, 2008, to determine whether there were any outstanding documents subject to those requests. (Doc. # 98, at 4.) In violation of the Magistrate Judge's order, Mr. GumBayTay and Mr. Newell did not have that meeting prior to the June 23, 2008 deadline. (Doc. # 94, at 10.)

Also, on June 18, 2008, the Magistrate Judge entered two written Orders (Docs. # 72-73.) One required Mr. GumBayTay to reimburse Ms. Boswell $200 for the cost of the court reporter's appearance and fees incurred by Ms. Boswell's counsel when Mr. GumBayTay failed to attend his scheduled June 3, 2008 deposition. (Doc. # 72.) The second required Mr. Newell to pay $300 to counsel for Ms. Boswell as a sanction for his "extreme tardiness" to the June 18, 2008 hearing. (Doc. # 73.)

Mr. Newell paid the court-ordered fine, totaling $500, with payment received by Ms. Boswell's counsel on July 7, 2008. Unbelievably, however, on July 8, 2008, Mr. Newell attempted to extort that money with a false threat, by leaving the following voice mail for Ms. Neal, who is Ms. Boswell's counsel:

> Hello, Miss Neal. This is Al Newell. I'm leaving you a message. My first message is, it is about noon on Monday the 8th, I think. You do not have very

7

long to give me my money back that I just paid to you. If you do not, I promise you will never get out of jail. Second thing: you better tell me what you are going to do to fix Mr. GumBayTay's life that you ruined. Same thing: if you don't, you will never get out of jail. This is not a joke. I don't bluff, and I don't kid, and I don't really care. Have a good day.

(Neal Decl. ¶¶ 7-8.)

And, on July 5, 2008, three days prior to narrating the abusive voice mail, Mr. Newell made baseless accusations against Ms. Neal's client and threatened Ms. Neal with prosecution in an email to her[4]:

> YOUR CLIENT BOSEWELL [SIC] HAS 3 OUTSTANDING WARRANTS FOR ASSAULT AND DRUGS YOU ARE HEREBY NOTIFIED THAT IF YOUR CLIENT IS NOT PROSCEUTED [SIC] AND OR TURNED IN IMMEADIATLY [SIC] YOU WILL BE CHARGED WITH AIDING AND ABETTING, COMPOUNDING, AND OBSTRUCTION. YOURS TRULY, AL NEWELL

(Attach. A to Neal Decl. ¶ 3 (Doc. # 87).) On July 7, 2008, in a letter to Ms. Neal (Doc. # 87-4), Mr. Newell reiterated these accusations and threats. (Attach. B to Neal Decl. ¶ 5 (Doc. # 87).) The letter indicates that the undersigned and Judge Moorer were copied on the letter.

Mr. Newell's reprehensible conduct not only occurred out of court, but also infiltrated his filings with the court. On July 10, 2008, Mr. Newell filed a proposed Amendment to Counterclaim. (Doc. # 79-2.) The proposed pleading asserts, without evidentiary support, that Ms. Boswell's claims against Mr. GumBayTay arose because Ms. Neal conspired with

---

[4] At no time has Mr. Newell offered any evidentiary support for his accusations against either Ms. Boswell or Ms. Neal.

8

Ms. Boswell in order to "blackmail[]" Mr. GumBayTay. (Doc. # 79-2.) Moreover, Mr. Newell's categorization of Ms. Boswell in that proposed pleading is demeaning and derogatory, not to mention baseless, and is repeated five times. Specifically, Mr. Newell refers to Ms. Boswell as a "crack whore," "this crack whore who is trying to blackmail . . . Mr. Gumbaytay," one of those "[c]rack whores," an "unreliable crack whore[]," a "crack whore," and a "crack whore Section 8 tenant." (Doc. # 79-2.) He further alleges that Ms. Neal and Ms. Boswell fabricated evidence in this case, including faking Mr. GumBayTay's voice on tape, so that Ms. Boswell could obtain free housing and Ms. Neal could promote her "likely . . . political aspirations." (Doc. # 79-2.)

In a concurrently-filed Motion for Summary Judgment (Doc. # 79-3), Mr. Newell repeats, again without evidentiary support, several of those allegations. He calls Ms. Boswell a "crack whore," says that Ms. Neal and Ms. Boswell conspired to "professionally frame[]" Mr. GumBayTay, and proclaims that "the named Defendants" (by which, context suggests, Mr. Newell meant to refer to Ms. Boswell and her counsel) are responsible for "the $500 Mr. Newell has already paid." (Doc. # 79-3.)

Then, on September 11, 2008, Mr. Newell filed a pleading, styled "Request for Leave of Court." (Doc. # 111.) In that pleading, which is wholly unsupported by evidence, Mr. Newell says, first, that "Allison Neal and her staff are capriciously and blatantly and **illegally filing** such briefs, writs, motions and illegal, absurd pleadings for a crack whore plaintiff, who's same, said legal filings are time-barred" (Doc. # 111, at 1 (emphasis in original).)

9

Second, he says, "In fact, [attorneys for Ms. Boswell] were aggressively trying to put this innocent man in jail right after his deposition, for a number of Housing Act violations and untrue claims and charges brought to them by a disreputable plaintiff who had outstanding warrants for her arrest."  (Doc. # 111, at 2 (brackets added).)  Third, he proclaims that "ACLU plaintiff[] manufactured evidence where their client, established by professional investigator as a disreputable crack whore, leads Gumbaytay on. . . ."  (Doc. # 111, at 2.)

The unprofessional, inappropriate and unsupported accusations were repeated on February 10, 2009, in the Objection to Summary Judgment (Doc. # 130).  Mr. Newell, not content to confine his vituperative allegations to parties in the case, stated that Ms. Boswell "lives with a drug addicted parent for which [sic] she provides, housing and drugs by selling drugs and possibly herself on the streets."  (Doc. # 130, at 3.)

Mr. Newell also ignored the procedural rules for submitting pleadings to the court. On three different dates in August 2008, Mr. Newell sent six emails to the undersigned's work email address and attached to those emails a compilation of largely incomprehensible documents.  (Doc. # 99.)  No explanation was provided by Mr. Newell as to the purpose for submitting these emails or why he sent these emails to the undersigned's work email address, which is published neither on the court's CM/ECF electronic filing system nor on the Middle District of Alabama's website.  In an Order entered on August 27, 2008, the court found that Mr. Newell's acts of sending these emails to the undersigned's work email address were inappropriate and in violation of the rules of this court for filing pleadings.  (Doc. # 99, at 2.)

Consequently, Mr. Newell was directed to cease sending emails to the undersigned's work email address for any purpose and to file all pleadings electronically in compliance with the court's *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Documents in the District Court under the Case Management/Electronic Case Files* (CM/ECF) System.

Also, in August 2008, Mr. GumBayTay hand-delivered a motion for filing in this case, and, in the presence of an employee of the Clerk of the Court, he signed Mr. Newell's name on the motion. (Doc. # 96; *see also* Doc. # 106, at 1 n.1.) Mr. Newell claims he gave Mr. GumBayTay "permission" to sign his name (H'rg Tr. 94); assuming *arguendo* the statement's truth, such permission does not abrogate Mr. Newell's obligations under Rule 11 of the Federal Rules of Civil Procedure.[5] *See* Fed. R. Civ. P. 11(a) (requiring an attorney to sign every pleading, written motion or other paper submitted on behalf of his client). The improper signature was never corrected. *See id.*

The culmination of Mr. Newell's conduct resulted in an evidentiary hearing held on March 24, 2009, *see supra* note 1. (H'rg Tr. 86-104.) At the hearing, Mr. Newell did not offer any evidence to support his accusations lodged against Mr. Boswell and her counsel, did not present a satisfactory explanation for his misconduct, and admitted that he had "threaten[ed]" Ms. Neal. (H'rg Tr. 92.) As to his mudslinging references to Ms. Boswell

---

[5] While Ms. Boswell does not bring her motion for disqualification of Mr. Newell pursuant to Rule 11 (Doc. # 87, at 5 n.2), Mr. Newell's alleged act of allowing his client to forge his (Mr. Newell's) signature on a motion to be filed in federal court typifies Mr. Newell's generally unprofessional conduct in these proceedings.

11

as a "crack whore," Mr. Newell said that he may have been a "little overzealous" and that perhaps his pleadings could have been "done more tactfully." (H'rg Tr. 87 & 88; *see also* H'rg Tr. 96.) He also, however, said he thought the allegations "were true." (H'rg Tr. 87.)

### III. DISCUSSION

**A.     Disqualification and Other Sanctions**

Mr. Newell's conduct in this case has made a mockery of the judicial system. It has obstructed the orderly administration of justice, and has violated numerous Alabama Rules of Professional Conduct.

Applying the principles of *Schlumberger Technologies*, Mr. Newell's filings in this court have disrupted the orderly administration of justice. *See* 133 F.3d at 1561. Throughout the course of this litigation, Mr. Newell has filed abusive and harassing documents replete with demeaning and derogatory name-calling and vituperous accusations impugning the character of Ms. Boswell and her counsel. Without any evidentiary basis whatsoever, he has accused Ms. Boswell and Ms. Neal of conspiring to fabricate evidence and to perpetrate a fraud on the court, and in the coarsest of language, has repeatedly called Ms. Boswell a drug user and a prostitute, that is, "a crack whore." (Docs. # 79-2, 79-3, 111.) His references to Ms. Boswell as a "crack whore" were not simply, as he says, a "little overzealous" and lacking "tact." (H'rg Tr. 87 & 88; *see also* H'rg Tr. 96.) Those references were, and the court so finds, intentionally calculated and made in bad faith for the purpose of harassing, embarrassing and disparaging Ms. Boswell. Through his offensive, baseless and harassing

submissions, Mr. Newell has disrupted these proceedings and failed to fulfill his duties as an officer of the court.

Mr. Newell further has threatened the orderly administration of justice by his inexcusable tardiness. He was an hour and fifteen minutes late to the June 18, 2008 hearing before the Magistrate Judge, and his reason for being late was wholly unbelievable and his tardiness was completely avoidable. (Doc. # 94, at 5 n.5.) His lack of respect for court-imposed time lines was repeated at the March 24, 2009 evidentiary hearing. Notwithstanding that Mr. Newell's misconduct was directly at issue at that hearing, Mr. Newell and his client were late to court after a recess. (H'rg Tr. 81, 84.) Additionally, Mr. Newell engaged in an obstructive maneuver when he moved for the continuance of Mr. GumBayTay's deposition, hours after the time scheduled for that deposition. The Magistrate Judge accurately characterized Mr. Newell's motion to continue as an unacceptable "dilatory tactic[.]" (Doc. # 59, at 2; *see also* Doc. # 94, at 4 n.3.) Moreover, in direct and flagrant violation of the Magistrate Judge's directive, Mr. Newell did not meet with his client prior to the court-imposed June 23, 2008 deadline to discuss certain discovery matters. (Doc. # 94, at 10.)

The reprehensibleness of Mr. Newell's court filings and conduct in the courtroom unfortunately is matched, if not exceeded, by his behavior toward opposing counsel outside of the courthouse doors. He has attempted to extort money from Ms. Boswell by his threatening voice mail to Ms. Boswell's counsel, demanding repayment of the $500 court-ordered sanction and falsely exclaiming that this sanction constituted blackmail. The court

finds that Mr. Newell acted willfully and in bad faith and that he attempted to contravene the court's order requiring payment of $500 to Ms. Boswell's counsel.  Mr. Newell's conduct is indefensible.  Combined with the hollow accusations lodged in Mr. Newell's July 5, 2008 email to Ms. Boswell's counsel and reiterated in his July 7, 2008 letter to her, these baseless threats were calculated to compromise the orderly administration of justice.  The court further finds that these contacts were initiated by Mr. Newell in bad faith for the purpose of intimidating and harassing Ms. Boswell and her counsel.

Mr. Newell's constant disruptions during Mr. GumBayTay's deposition are but another example of his obstreperous conduct.  In the words of the Magistrate Judge, Mr. Newell's conduct in this case has been "appalling" and "atrocious"[6]  (Doc. # 94, at 1 n.1.)

Moreover, even if Mr. Newell's actions did not threaten the orderly administration of justice, which they did, disqualification would be appropriate in these circumstances, given that his actions violated at least five Alabama Rules of Professional Conduct.  *See Thomas*, 293 F.3d at 1323 n.25 ("The United States Supreme Court has stated that a federal court can

---

[6] In the Recommendation entered by the Magistrate Judge on August 7, 2008 (Doc. # 94), which the court adopted (Doc. # 103), the Magistrate Judge noted:

> This Report and Recommendation does not address any of the other outstanding motions [which would include the Motion for Attorney Disqualification and Other Sanctions (Doc. # 87)]  However, the undersigned does note the behavior by defense counsel Alfred Newell IV has been appalling.  Specifically, the undersigned notes the ongoing violations of the Alabama Rules of Professional Conduct, the inappropriate pleadings, and the written and verbal abuse to his opposing counsel.  The undersigned has never seen such atrocious behavior from counsel during his tenure on the bench nor in his prior legal practice.

(Doc. # 94, at 1 n.1 (brackets added).)

14

charge attorneys with knowledge of, and hold them accountable to, state ethics rules in the state where the court sits.") Rule 3.10 of the Alabama Rules of Professional Conduct provides that "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain advantage in a civil matter." Ala. Rules of Prof'l Conduct R. 3.10. The Comment to the Rule clarifies that "[t]hreatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of that process[.]" *Id.* cmt. By his threats to bring criminal charges against Ms. Neal if she did not prosecute or "turn in" Ms. Boswell, and his threats that Ms. Neal would "never get out of jail" if she did not return the $500 court-ordered payment and "fix Mr. GumBayTay's life," Mr. Newell clearly violated Rule 3.10.

Mr. Newell also violated Rule 3.10 by attempting to coerce enforcement of the alleged "3 outstanding warrants for assault and drugs" against Ms. Boswell. As the comment to Rule 3.10 further states, "[T]he person against whom the criminal process is so misused may be deterred from asserting his or her legal right and when that happens the usefulness of the civil process in settling private disputes is impaired." Ala. Rules of Prof'l Conduct R. 3.10. The court finds that, by threatening Ms. Boswell's arrest and prosecution, Mr. Newell intentionally sought to deter Ms. Boswell from asserting her fair housing rights and to gain advantage in this civil proceeding. This conduct violates Rule 3.10.

Rule 3.1 of the Alabama Rules of Professional Conduct also has been transgressed by Mr. Newell. It reads, "In his representation of a client, a lawyer shall not . . . assert a

15

position, conduct a defense . . . or take other action . . . when it is obvious that such action would serve merely to harass or maliciously injure another." Ala. Rules of Prof'l Conduct R. 3.1. Mr. Newell's threats, fabrications, and coarse accusations were without a legal or factual basis. It is the finding of the court that the accusations were lodged for the purpose of harassing and maliciously injuring Ms. Boswell and her counsel.

The violations do not end there. Rule 3.3 of the Alabama Rules of Professional Conduct states, "A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal[.]" Ala. Rules of Prof'l Conduct R. 3.3. In his submissions and letter to the court, Mr. Newell, at the very least, has made factual and legal assertions with reckless disregard as to their truth or falsity. He has made the gravest of allegations against Ms. Boswell and Ms. Neal, some barely relevant and others wholly outside the bounds of civility and decorum, and has not supported these allegations with any form of evidence.

Rule 3.5 of the Alabama Rules of Professional Conduct states, "A lawyer shall not . . . engage in conduct intended to disrupt a tribunal." Ala. Rules of Prof'l Conduct R. 3.5. The comment to this Rule clarifies, "Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants." Ala. Rules of Prof'l Conduct R. 3.5 cmt. Through Mr. Newell's filings with and letter to this court, and as described above, the court finds that Mr. Newell has engaged in abusive and obstreperous conduct intended to disrupt the tribunal, and in the process has trampled Rule 3.5.

Finally, Rule 8.4 of the Alabama Rules of Professional Conduct states, "It is professional misconduct to . . . violate or attempt to violate the Rules of Professional Conduct," to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[,]" to "engage in conduct that is prejudicial to the administration of justice[,]" or to "[e]ngage in any other conduct that adversely reflects on his fitness to practice law." Ala. Rules of Prof'l Conduct R. 8.4. Mr. Newell's purposeful, prejudicial obstruction of the administration of justice has been detailed in this opinion. To summarize, Mr. Newell has violated Rule 8.4 through his pattern of harassment, his dishonest, disruptive, and abusive attacks, and his attempts to undermine and ignore court orders.

For all of the foregoing reasons, Mr. Newell is subject to sanctions. He already has been disqualified from representation of Mr. GumBayTay in this case. (H'rg Tr. 104.) The court also has considered carefully other available, reasonable and appropriate sanctions, as forewarned (H'rg Tr. 104). Based upon that consideration, Mr. Newell's misconduct will be referred to the Disciplinary Commission of the Alabama State Bar. *See Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1336 n.1 (11th Cir. 2002) (upholding sanctions imposed pursuant to the district court's inherent power that included, among other sanctions, reporting the actions of the disobedient attorney to "Federal Bar and . . . the Grievance Committee of the Florida Bar"). Mr. Newell's misconduct also will be

reported to the Chief Judge of the United States District Court for the Northern District of Alabama.[7]

The sanctions are severe. Given the past failure of monetary sanctions to persuade Mr. Newell to behave as befits an officer of this court,[8] and the gravity of Mr. Newell's abusive and harassing actions, the court finds that disqualification and the other sanctions are necessary, reasonable and appropriate. In such an instance as this, the public interest in securing obedience to the mandates of the court and in the orderly administration of justice outweigh Mr. GumBayTay's interest in representation by counsel of his choice. *See Kleiner*, 751 F.2d at 1210.

**B.     Attorney's Fees**

The court also finds that an award of attorney's fees is appropriate. Having carefully reviewed the legal tasks performed, the rates charged and the time expended in light of the guidelines set out in *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988),[9] the court concludes that the hourly rates and expended hours are reasonable and that counsel

---

[7] At the next district judges' meeting of the Middle District of Alabama scheduled in June 2009, if Mr. Newell has not already voluntarily withdrawn from the Bar of this court, the undersigned will place on the agenda the issue of Mr. Newell's removal from the roster of attorneys eligible to practice before the United States District Court for the Middle District of Alabama, *see* M.D. Ala. LR 83.1(f), (g).

[8] The court previously imposed a monetary sanction against Mr. Newell; this sanction apparently was the immediate trigger for escalation of his harassing behavior and accusations, and Mr. Newell sought to avoid the legal effect of that court-imposed monetary sanction by improperly seeking to coerce Ms. Boswell into returning the amount paid.

[9] In *Norman*, the former Fifth Circuit relied, in part, upon the oft-cited standard articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See Norman*, 836 F.2d at 1298-99.

for Ms. Boswell necessarily incurred those fees for time spent pursuing the Motion For Attorney Disqualification and Other Sanctions. These reasonable fees were necessarily incurred by Ms. Neal ($375.00), Emily J. Martin ($4,481.25), and John Pollock ($284.00), for a total amount of $5,140.25.

### IV. CONCLUSION

The court has determined, after careful review of the evidence, the totality of the circumstances, and the entire court file, that Mr. Newell's egregious misconduct during this litigation has disrupted the orderly administration of justice, that Mr. Newell has violated multiple Alabama Rules of Professional Conduct, and that he has acted in bad faith. In this opinion, the court has expounded upon the reasons why, at the March 24, 2009 evidentiary hearing, it orally granted Ms. Boswell's Motion for Attorney Disqualification and Other Sanctions (Doc. # 87) and disqualified Mr. Newell from further representation in the case. Moreover, in this opinion, additional sanctions have been considered and imposed against Mr. Newell, and Mr. Newell's removal from the roster of attorneys eligible to practice before the United States District Court for the Middle District of Alabama, *see* M.D. Ala. LR 83.1(f), (g), remains to be considered by the full court, *see supra* note 7.

Accordingly, it is ORDERED that, in addition to Mr. Newell's disqualification as counsel in this case, the following sanctions also are ASSESSED against Mr. Newell:

(1) Mr. Newell's conduct in this action shall be REFERRED to the Disciplinary Commission of the Alabama State Bar.

(2)     Mr. Newell's conduct in this action shall be REPORTED to the Chief Judge of the United States District Court for the Northern District of Alabama.

It is further ORDERED that Ms. Boswell shall HAVE and RECOVER from Mr. Newell $5,140.25 in attorney's fees, for which let execution issue.

The Clerk of the Court is DIRECTED to serve a copy of this Memorandum Opinion and Order on Mr. Newell.

DONE this 1st day of June 2009.

                                       /s/   W.  Keith Watkins
                                       UNITED STATES DISTRICT JUDGE